## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BRANCOUS, LP1

        Plaintiff,

     v.

BRAEMAR HOTELS & RESORTS INC.,
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

MONTY BENNETT
   c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

RICHARD STOCKTON
   c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

STEFANI DANIELLE CARTER
   c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

MARY CANDACE EVANS
   c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

(cont.)

Civil Action No. 1:25-cv-03971

**VERIFIED COMPLAINT JURY**

**TRIAL DEMANDED**

MATHEW RINALDI
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

REBECA ODINO-JOHNSON
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

REBECCA MUSSER
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

KELLIE SIRNA
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

        and

BOB GHASSEMIEH
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

        Defendants.

Plaintiff Brancous, LP1 ("Brancous" or "Plaintiff"), for its complaint against Defendants Braemar Hotels & Resorts Inc. ("Braemar" or the "Company), Monty Bennett, Richard Stockton, Stefani Danielle Carter, Mary Candace Evans, Mathew Rinaldi, Rebeca Odino-Johnson, Rebecca Musser, Kellie Sirna, and Bob Ghassemieh (the "Director Defendants"), in their capacities as members of the Braemar's Board of Directors (the "Board"), states the following upon knowledge

as to itself and its own actions, and upon information and belief as to all other matters.

## <u>INTRODUCTION</u>

1.     This case arises from the Board's weaponization of the Company's Bylaws (defined below) to silence shareholders and block them from exercising their fundamental right to nominate and vote on the Company's directors.

2.     Defendant Braemar is a real estate investment trust. Over the past 10 years, the value of the Company's stock has declined by nearly 90%.

3.     Braemar is externally managed by Ashford Inc. ("Ashford"), whose Founder, CEO, and Chairman is Defendant Monty J. Bennett, the incumbent chairman of Braemar's Board.

4.     Bennett, through Ashford's Fifth Amended and Restated Advisory Agreement, dated as of April 13, 2018 (as amended, the "Advisory Agreement") with Braemar, has taken *hundreds of millions of dollars* in fees from the Company and its shareholders while delivering abysmal returns.

5.     The Board has blindly continued to renew Ashford's Advisory agreement, to the detriment of Braemar shareholders, despite this catastrophic destruction of value. Indeed, Ashford's management fees have *risen* steadily over the years, and Bennett has received outlandish compensation for what the Board describes as "exceptional service," despite enormous losses to shareholders.

6.     Expecting that shareholders would not vote in favor of the incumbent Board at this year's annual meeting given the current Board's performance, the incumbents rigged the election by improperly excluding director nominees from a large shareholder, Brancous, in violation of Braemar's own Bylaws, the Securities Exchange Act of 1934 ("Exchange Act"), and the Exchange Act ules, including universal proxy access.

7.      On October 17, 2025, Plaintiff timely nominated four highly qualified and accomplished individuals to serve on the Board. The Board improperly rejected the nominations under the thin guise of various contrived "deficiencies" in order to ensure that the incumbent directors would run unopposed and are guaranteed to preserve their seats.

8.      On October 30, 2025—the same day the Company sent a letter to Brancous rejecting its nominees—the Company issued a Definitive Proxy and proxy card omitting Brancous's nominees and concealing that Brancous had nominated those individuals and the Board had rejected them. This Board has a history of improper conduct with respect to director elections, including improper rejection of outside nominees and frivolous litigation filed against shareholders that have challenged the incumbent directors for their positions.

9.      Plaintiff's nominations were timely, proper, and included the materials required by the Bylaws and requested by the Board. The Board's various nitpicking as to immaterial disputes with the nomination notice, as well as its theory that the notice was somehow untimely under a contortion of the Bylaws, are all baseless and intended only to entrench the Company's current managers and protect Ashford's advisory revenue.

10.     This action asserts claims for breach of fiduciary duty and violation of Section 14 of the Exchange Act and its corresponding rules against all the Director Defendants.

## I.      THE PARTIES

11.     Plaintiff Brancous, LP1 is a limited partnership organized under the laws of Ontario, Canada with a principal place of business in Ontario, Canada.

12.     Nominal Defendant Braemar Hotels & Resorts Inc. is a publicly traded Maryland corporation with its principal place of business at 14185 Dallas Parkway, Suite 1200, Dallas, Texas.

13.    Defendant Monty J. Bennett is the Chairman of the Board of Braemar.

14.    Defendant Richard Stockton is the Chief Executive Officer (CEO) of Braemar and a member of the Board.

15.    Defendant Stefanie Danielle Carter is the Lead Director of the Board.

16.    Defendants Mary Candace Evans, Mathew D. Rinaldi, Rebeca Odino-Johnson, Rebecca Musser, Kellie Sirna, and Bob Ghassemieh are members of the Board.

## II.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 because it arises, in part, under Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder, including remedying unlawful conduct in advance of the imminent director election.

18.    This Court has subject matter jurisdiction over the state law claim in this action because the claim is premised, in part, on Defendants' violation of Exchange Act rules and regulations, and the interpretation of those rules and regulations are necessary and essential to the resolution of the dispute. The claim further raises substantial issues of federal law, namely the uniform application of securities rules and regulations, a subject matter in which the federal courts have special expertise. It would not upset the balance of federal and state judicial power for a federal court to decide questions of federal regulation.

19.    Further, this Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367 because it derives from a common nucleus of operative fact and is so related to the federal law claim that it forms part of the same case or controversy.

20.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Braemar is a Maryland corporation.

21.     This Court has personal jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, over Braemar because it is a Maryland corporation and the Director Defendants because they are directors of a Maryland corporation. Defendants purposefully availed themselves of conducting business in Maryland.

### III.     FACTUAL BACKGROUND

**A.     The Board's History Of Entrenchment Tactics**

22.     Braemar is a publicly traded Maryland real estate investment trust that manages a portfolio of luxury hotels and resorts.

23.     The Company was spun off from Ashford Hospitality Trust on November 19, 2013 with an opening price of $21.35.

24.     Since then, the stock has fallen nearly 90% and now trades at under $3.00.

25.     This case arises from the Board's efforts to entrench themselves and stifle the ability of shareholders to nominate new directors.

26.     Indeed, this action is not the first alleging that the Board violated its duties by excluding valid nominees. In March 2024, Blackwells Capital LLC ("Blackwells") submitted a director nomination notice as to four individuals. As in this case, the Board summarily rejected Blackwells' nominees and deemed its nomination notice "deficient." The Company went on to file suit against Blackwells related to the proxy contest.

27.     In June 2024, the Company and Blackwells announced a "Cooperation Agreement" wherein Blackwells agreed to withdraw its director nomination notice and proposals, cease soliciting proxies, and vote in favor of all Braemar directors and nominees.

28.     Further, the Company agreed to pay all Blackwells' legal fees. The Board also approved a loan to Blackwells at a lower rate than the Company itself borrows at, allowing Blackwells to purchase shares in order to vote for the Company's nominees and proposals.

29.     In November 2024, Defendant Ghassemieh sent a letter to Braemar shareholders expressing concerns with the Company's management and performance. The letter called for the termination of the Advisory Agreement and advocated the Company be self-managed. The letter indicated Defendant Ghassemieh would vote against the entire Board—except for Defendant Stockton—and urged other stockholders to do the same. In June 2025, Defendant Ghassemieh submitted notice to the Company nominating directors.

30.     In August 2025, the Company announced it had entered into another "Cooperation Agreement," this time with Defendant Ghassemieh. Defendant Ghassemieh agreed to withdraw the nomination notice and the Company appointed him to the Board. Among other things, the agreement requires Defendant Ghassemieh to vote his shares in favor of all directors nominated by the Board.

31.     The Board has demonstrated that it cannot face an open, fair election because of its abysmal performance and blind loyalty to Ashford. Instead, in order to preserve their seats, the directors have repeatedly resorted to manipulation of the election process, violation of the Company's Bylaws and dealmaking.

**B.      Braemar's Bylaws Requirements for Nominating Directors**

32.     The Company is governed by the Braemar Hotels & Resorts Inc. Fifth Amended Bylaws ("Bylaws"). The Bylaws are attached as Exhibit A.

33.     Article I, Section 11 of the Bylaws, sets forth requirements for the "Advance Notice of Stockholder Nominees for Director and Other Stockholder Proposals" (the "Advance Notice Requirements").

34.     Article I, Section 11(a)(1) states "Nominations of individuals for election to the Board of Directors . . . may be made at an annual meeting of stockholders . . . by any stockholder

of the Corporation who was a stockholder of record both at the time of giving notice by the stockholder . . . and at the time of the annual meeting."

35.    Article I, Section 11(a)(2) requires "timely notice in writing to the secretary of the Corporation . . .delivered to the secretary at the principle executive office of the Corporation not earlier than the 90th day . . . nor later than the 60th day prior to the first anniversary of the date of the preceding year's annual meeting.

36.    Article I, Section 11(a)(2) continues "that in the event that the date of the annual meeting is advanced or delayed by more than 30 days from the first anniversary of the date of the date of the preceding year's annual meeting, in order for notice by the stockholder to be timely, such notice must be so delivered not earlier than the 90th day prior to the date of such annual meeting and not later than 5:00 p.m., Eastern Time, on the later of the 60th day prior to the date of such annual meeting or the tenth day following the day on which the public announcements of the date of such meeting is first made."

37.    Article I, Section 11(a)(3)(A) applies to "any business other than a nomination of an individual for election . . . as a director" while (3)(b) requires the Notice to set forth information required pursuant to Exchange Act Rule 14a-19(b), including the names of all nominees and a statement of intent to solicit holders of at least 67% of the voting power of shares entitled to vote on the election of director in support of director nominees other than the registrant's nominees.

38.    Article I, Section 11(a)(3)(C)(i) requires the Notice to set forth as to the stockholder giving notice, proposed nominee, and any Stockholder Associated Person: "the class, series and number of all shares of stock or other securities of the Corporation . . . which are owned (beneficially or of record), . . . the date on which each such Company Security was acquired and

the investment intent of such acquisition, and any short interest . . . in any Company Securities of any such person."

39.    Article I, Section 11(a)(3)(C)(ii) requires the Notice set forth "(ii) the nominee holder for, and number of, any Company Securities owned beneficially but not of record" and

40.    Article I, Section 11(a)(3)(C)(iii) requires the Notice set forth "whether and to the extent . . . directly or indirectly . . . during the last six months has engaged in any hedging, derivative or other transaction or series of transactions or entered into any other agreement, arrangement or understanding . . . with the effect or intent of which is to . . . manage risk benefit from changes in the price . . . increase or decrease voting power[.]"

41.    Article I, Section 11(a)(3)(C)(iv) requires the Notice set forth "any substantial interest, direct or indirect . . . other than an interest arising from the ownership of Company Securities . . . where such stockholder, Proposed Nominee or Stockholder Associated Person receives no extra or special benefit not shared on a pro rata basis by all other holders of the same class or series.

42.    Article I, Section 11(a)(3)(D)(i) requires the Notice set forth the name and address as they appear on the Company's stock ledger of any stockholder defined in (3)(C)(i) and (iii) and (D)(ii) requires a "description of the investment strategy or objective, if any, of such stockholder" and "a copy of the prospectus, offering memorandum" or other such materials, while (D)(iii) requires information "that would be required to be disclosed in connection with the solicitation of proxies pursuant to Regulation 14A under the Exchange Act."

43.    Article I, Section 11(a)(3)(D)(iv) applies only "in the  in the event that any of the stockholder, the Proposed Nominee or the Stockholder Associated Person has in the twenty-four months immediately preceding the date of such notice made a proposal to acquire control of the

Corporation (whether through the acquisition of a majority of the outstanding securities of the Corporation, the acquisition of all or substantially all of the Corporation's assets or otherwise)"

44.    Article I, Section 11(a)(3)(E) requires the Notice set forth "the name and address of any person who contacted or was contacted by the stockholder giving the notice or any Stockholder Associated Person about the Proposed Nominee" while (a)(3)(F) request the same for "any other stockholder supporting the nominee."

45.    Article I, Section 11(a)(4)(i) requires the Notice be "accompanied by a certificate executed by the proposed nominee" certifying they are (a) "not, and will not become, a party to any agreement, arrangement or understanding with any person or entity other than the Corporation in connection with service or action as a director that has not been disclosed to the Corporation" and (b) "will[ing] to serve as a director . . . if elected."

46.    Article I, Section 11(a)(4)(i) requires "a completed Proposed Nominee Questionnaire . . . and shall include all information . . . that would be required to be disclosed in connection with the solicitation of proxies for the election of the Proposed Nominee as a director in an election contest . . . or would otherwise be required in connection with such solicitation . . . pursuant to Regulation 14A (or any successor provision) under the Exchange Act . . . or would be required pursuant to the rules of any national securities exchange on which any securities of the Corporation are listed[.]"

47.    Article I, Section 11(a)(5) deals with increases in the number of directors and is not relevant to this case.

48.    Article I, Section 11(a)(6) defines "Stockholder Associated Person" in eight parts as any person: (i) acting in concert with the stockholder; (ii) joined a group with the stockholder; (iii) shares information with the stockholder; (iv) entered a pooling arrangement with the

stockholder; (v) works with the stockholder to influence or change control of the company; (vi) is required to take the same actions as the stockholder; (vii) is the beneficial owner of shares of stock of the Corporation owned of record or beneficially by the stockholder; (viii) is under common control with the stockholder.

**C.    Brancous Submits A Timely And Proper Nomination Notice**

49.    On October 17, 2025, Brancous sent by email a letter titled "Notice of Director Nominations for Braemar Hotels & Resorts" (the "Nomination Notice" or "Notice") to the Board. The Nomination Notice is attached hereto as Exhibit B.

50.    In the letter, Brancous nominated Oliver Corlette, Ronald Davies, Andrew Fleiss, Michael Litwin, and Alejandro Malbran (the "Nominees") for election to the Board at the Annual Meeting to be held December 15, 2025.

51.    Brancous's Nomination Notice asserted that Brancous was a record stockholder and a stockholder in street name, providing supporting evidence of its stockholdings. Brancous's record holdings also appear in the Company's records.

52.    Brancous timely delivered the Nomination Notice sixty days in advance of the Annual Meeting to Alex Rose, Braemar's General Counsel, by email to the principal executive office as requested by the Director Questionnaire.

53.    Plaintiff's Notice complied in all respects with federal law, all applicable SEC rules and guidance, as well as the Company Bylaws, and Brancous and its Nominees provided all required information and made the material disclosures required by the Bylaws and the Exchange Act Rules, including Rule 14a-19.

**D.**    **Braemar Invents Deficiencies in Plaintiff's Nomination Notice**

54.    On October 30, 2025, the Board, by letter from counsel (the "Exclusion Letter"), rejected Plaintiff's nominations as invalid based on alleged deficiencies not supported by the Bylaws.

55.    As detailed herein, the Company's rejection of Plaintiff's Nomination Notice was wholly without merit.

**1.**    **Brancous Is A Stockholder**

56.    The Board asserted in its Exclusion Letter "the notice fails to provide evidence you were a stockholder of record at the time of submission."

57.    Brancous and Mr. Malbran, on behalf of Brancous, stated in the Notice and in response to the Company's Director Nominee questionnaire that Brancous is a record owner of 10 shares.

58.    The Company, in an August 17, 2025 letter to the SEC regarding Brancous's shareholder proposal, acknowledged "the Company reviewed its stock records, which indicate that [Brancous] was a record owner" of the Company's stock.

59.    Beyond explicitly acknowledging Plaintiff is a record owner of Company Shares, Brancous sent multiple letters (three on June 13, 2025; one on June 20, 2025) from Interactive Brokers showing beneficial ownership of 665,655 shares of the Company.

60.    The Board's rejection of the Notice on these grounds is baseless.

**2.**    **The Notice Was Timely**

61.    The Exclusion Letter also asserts that "the Notice is not valid because it was not timely delivered to the company," which is a fabricated objection based on the Board's own prior misconduct in attempting to ambush investors by moving around the Annual Meeting date.

62.     The Company held its 2024 Annual Meeting on December 17, 2024. Thus, as per Article I, Section 11(a)(2) of the Bylaws, the deadline to give notice to the Company of director nominations was October 18, 2024, i.e. "the 60th day prior to the first anniversary of the date of the preceding year's anniversary." *Id.*  The Company *expressly confirmed* this deadline in its 2024 definitive proxy.

63.      Nevertheless, in a May 23, 2025 Form 8-K, the Company unexpectedly announced it would hold its 2025 Annual Meeting on July 30, 2025.

64.     The acceleration of the Meeting date was intended to surprise and hamstring investors who intended to nominate directors later in the year, and made it difficult for those investors to gather their nomination materials.

65.     Article I, Section 11(a)(2) states that "if a meeting is advanced or delayed more than 30 days from the first anniversary of the date of the preceding year's annual meeting" notice must be delivered "on the later of the 60th day prior to the date of such annual meeting of the *tenth day* following the day on which the public announcement of the date of such meeting is first made." (emphasis added). Thus, investors had only until June 2, 2025 to submit nominations.

66.     Despite the accelerated deadline and lack of notice, prior to the June 2, 2025 deadline for nominations, Defendant Ghassemieh—previously a dissident shareholder who the Company would eventually agree to join the Board—submitted a valid nomination notice on behalf of himself and related entities. The Company's strategy had failed and the director election was set to be contested despite the Board's best efforts.

67.     Rather than compete in a contested election, the Board announced in a July 2, 2025 Form 8-K—with no explanation—that the Annual Meeting would be moved from July 30, 2025 back to its original date on December 15, 2025.

68.     In August 2025, Defendant Ghassemieh agreed to withdraw his nomination notice and the Company appointed him to the Board. Among other things, his agreement with the Company requires Defendant Ghassemieh to vote his shares in favor of all directors nominated by the Board. Thus, the incumbent Board had found a way to stave off competition for their seats again and obtain control over the way Defendant Ghassemieh, previously a dissident, would vote.

69.     As to Brancous's subsequent Notice—notwithstanding that the Board never held the Annual Meeting in July and reverted back to the original and expected timing, the Board maintains (solely in an effort to exclude the Nominees) that the deadline for nominations remained June 2, 2025—*i.e.*, over 6 months prior to the actual Meeting date.

70.     The Board cites Article I, Section 11(a)(2) of the Bylaws, which states "the postponement . . . or public announcement thereof, shall not commence a new time period for the giving of a stockholder's notice as described above." But the Board's utilization of that otherwise innocuous provision, under these circumstances, is inequitable and intended only to interfere with stockholder voting rights and entrench the incumbents. Under the Board's contortion of the Bylaws, the only window for submitting nominations for the *entire calendar year* would be a *ten-day period more than six months in advance of the actual Meeting date*.

71.     The Board's efforts to preclude director nominations based on the prior June 2025 deadline is inequitable, violates the Board's fiduciary duties, and should be rejected.

### 3.     The Notice Complied With The Bylaws In All Other Respects

72.     Notwithstanding the Board's baseless objections, the Notice complied with every requirement of Article I Section 11 of the Bylaws.

73.     As required by Article I, Section 11(a)(3)(B), the Notice includes the names of all nominees and statement of intent to solicit holders of at least 67% of voting power entitled to vote. *See* Notice at 3-4.

74.    As required by Article I, Section 11(a)(3)(C)(i), the Notice includes all Company securities owned by Plaintiff and proposed nominees. *See* Notice at 4-5.

75.    As required by Article I, Section 11(a)(3)(C)(iii), the Notice indicates Plaintiff and proposed nominees have not engaged in any transactions or agreements set out in the section. *See* Notice at 5-6.

76.    As required by Article I, Section 11(a)(3)(C)(iv) the Notice indicates Plaintiff and proposed nominees receives no interest arising from ownership of Company securities other than those shared on a pro rate basis by all other holders of the same class or series. *See* Notice at 6.

77.    As required by Article I, Section 11(a)(3)(D)(i), the Notice gives the name and addresses of Plaintiff and the proposed nominees owning Company securities. *See* Notice at 6-7.

78.    Although the Exclusion Letter asserts that "the Notice was not delivered in the manner required under the Bylaws," Plaintiff transmitted the Notice to the Company as requested by the director questionnaires.

79.    The Bylaws require the Notice to be delivered with "a completed Proposed Nominee questionnaire," and the questionnaire directs it to be submitted "to Alex Rose by email at arose@ashfordinc.com *or* by mail." *See* Bylaws art. I, § 11(a)(4) (emphasis added); Director Questionnaire at 2. Further, Rule 14a-19 provides that a notice may be transmitted electronically. *See* Rule 14-a19(b)(1) (permitting notice "[b]e postmarked or transmitted electronically to the registrant at its principal executive office."

80.    Elsewhere in the Bylaws, the Company reserves the right to transmit notice of its annual meetings and special meetings of the Board electronically. See Bylaws, art. 1, §4; art 2, § 10.

81.    Only when beneficial to the Company does it insist on physical delivery.

82.    The Exclusion Letter concedes the Notice discloses ownership of Company securities, but takes issue with a purported lack of investment intent before baselessly accusing Plaintiff of being part of a group pursuant to Rule 13d-1.

83.    The Exclusion Letter asserts the Notice fails to provide a description of the investment strategy when the Bylaws clearly require such description of intent "if any" exist. *See id.* § 11(a)(3)(D)(ii)(i). The Notice adequately responds "None."

84.    The Exclusion Letter points only to Schedule 14A, Item 4(b)(5), which requires the stockholder to indicate who will cover the cost of the solicitation.

85.    Despite the Company's assertion to the contrary, the Notice clearly states "Stockholder will bear the cost of solicitation. Stockholder may seek reimbursement from the Corporation." The first portion of the answer is anything but vague and directly complies with Schedule 14A, Item 4(b)(5).

**E.    The Nominees Completed The Company's Questionnaire**

86.    In addition to the materials submitted in the Notice, the Bylaws also require potential nominees to complete an onerous 66-page Questionnaire for Directors Officers and Controlling Persons of Braemar Hotels & Resorts Inc. (the "Questionnaire"). *Id.* § 11(a)(4).

87.    The Questionnaire goes far beyond what is required by federal law or SEC rules and regulations and seeks disclosure of personal information not remotely relevant to serving as a director of a corporation.

88.    Nevertheless, each Nominee responded to Questionnaire in its entirety and provided substantially complete material disclosures for the questions set forth therein.

89.    In the Exclusion Letter, the Board halfheartedly identifies various immaterial and irrelevant omissions or inconsistencies, much of which is attributable to the Company's own

poorly organized multi-part questions. None of the alleged deficiencies are legitimate or deprived the Board of necessary information about the Nominees.

90.    For example, Part One, Section A, Question 10(h) of the Questionnaire disclosure of "any agreement, arrangement or understanding between you and any other person that provides you, directly or indirectly, with the opportunity to profit or share in the profit derived from any increase or decrease in the price or value of the securities of the Company or any of its affiliates or competitors, or pursuant to which you will or may receive any performance-related compensation or payment from any person or entity?"

91.    Mr. Malbran indicated on his Questionnaire no such agreement exists. The Exclusion Letter attempts to construe the answer as incorrect, arguing Mr. Malbran must have such an "agreement" with Brancous. But he simply does not, notwithstanding the Board's speculation.

92.    Part One, Section A, Question 10(a) asks "Are you or have you been in the past a party to any agreement, arrangement or understanding with any other person(s) (including any stockholders of the Company or any other firm, corporation or other entity) and/or their affiliates pursuant to which you are to be or were selected as a director, officer or nominee for director of the Company?"

93.    The Notice states "[t]he Nominees have no understanding, agreement or arrangement with each other, the Stockholder, any affiliate of Stockholder, or any other persons with respect to BHR other than the consent by each of the Nominees to be named as a nominee in any proxy statement related to the forthcoming Annual Meeting and to serve as a director of the Corporation if elected as such at the Annual Meeting."

94.     Mr. Corlette answered "Yes" and indicated he agreed to be nominated. Mr. Davies answered "No" and explained he did agree to be nominated. Mr. Litwin and Mr. Fleiss answered "No."

95.     The Notice, and each Nominees answer to question 10(a) indicates that, beyond agreeing to be nominated by Brancous, no other agreement existed. Obviously, the Nominees would have to agree to be nominated before being nominated.

96.     Part One Section D, Question 3 asks "Do you or any of your associates have any interest, direct or indirect, by security holdings or otherwise, in any matters to be acted upon at the Annual Meeting (other than elections to office or interests under option or retirement plans disclosed elsewhere in this questionnaire)?"

97.     The Exclusion Letter references a shareholder proposal submitted by Brancous on June 1, 2025—which the Notice discloses—when the Board had already rejected the proposal multiple times, sent a "No Action" letter to the SEC on August 17, 2025, and ultimately did not include in the Company's Definitive Proxy.

98.     The Exclusion Letter goes on to accuse Plaintiff of failing include "information required by Item 404(a) of Regulation S-K [of] certain transaction[s] (or proposed transactions)" and insists Plaintiff's email—which was disclosed—about a potential transaction "if there were interest on the Company's side." At best Brancous expressed preliminary interest to Defendant Bennett which was not reciprocated and never responded to by Bennett or anyone else. This does not rise to the level contemplated by Part One Section D, Question 3 or 5(b)(1)(xi) and 7(b) of Schedule 14A. This is not a "transaction" within the meaning of Schedule 14A or Item 404(a) of Regulation 404(a) of Regulation S-K.

99.     Part One, Section A, Question 13 asks "Have you ever been a party to any civil litigation, whether as plaintiff or defendant and whether settled, closed or currently pending?"

100.    The Company points to a completely irrelevant condo fee dispute in which Mr. Malbran was almost immediately voluntarily dismissed and in which Mr. Malbran did not recall he had even been named as a party. The Exchange Act only requires disclosure of material litigation, which this is plainly not. The other litigation referenced by the Company is similarly immaterial or irrelevant.

101.    Part One, Section A, Question 10(k) asks "Have you, any of your associates, any stockholder of the Company who may nominate you for election as a director, or any Stockholder Associated Person (as defined by the Company's by-laws) of any stockholder of the Company who may nominate you for election as a director had, within the past 12 months, any direct or indirect written or oral communications with a director or executive officer of the Company or a former director or executive officer of the Company? If yes, please provide the names of individuals contacted, the dates of such communications and a description of the subject of the communications."

102.    Mr. Malbran listed 12 such communications, yet the Company baselessly—and with no further explanation or evidence—labels his response "substantially incomplete."

103.    Part One, Section A, Question 19 asks "Have you had any communications with any of your associates, any stockholder of the Company who may nominate you for election as a director, or Stockholder Associated (as defined by the Company's by-laws) of any stockholder of the Company who may nominate you for election as a director or any third parties about plans or proposals with respect to the Company or a director of executive officer of the Company" related to the Advisory Agreement, the Company's stock performance, or a sale of the Company.

19

104.    The Company cries foul solely based on Mr. Corlette and Mr. Malbran being on the same call with Defendant Stockton, which the Company knew. Even though both Mr. Corlette and Mr. Malbran indicated the date and, as the Company describes it, "near identical" descriptions of the conversation.

105.    The Company also describes Part One, Section A, Questions 19(a)-(c) as "check-the-box questions" and fault Mr. Fleiss for not checking the boxes. Questions 19(a)-(c) are confusing and simply not "check-the-box" questions.

106.    Schedule 14A, Item 7(b) requires "the specific experience, qualifications, attributes or skills that led to the conclusion that the person should serve as a director …, in light of the registrant's business and structure."

107.    Somehow, the Company found it inadequate to point to the 347-page exhibit made up solely of Questionnaires outlining exactly the "experiences, qualifications, attributes or skills" possessed by the Nominees.

108.    The Exclusion Letter lists several other purported "deficiencies" which are non-existent or overly invasive, such as listing every charitable donation in the last five years.

109.    The Company's manufactured "omissions" are not "deficiencies" justifying rejection of the Notice and exclusion of the Brancous Nominees. Rather, they were concocted by the Board to exclude qualified nominees and deny shareholders the right to vote for new directors besides the incumbents–who have tanked the stock price and greatly harmed shareholders.

**F.    Brancous Responded To The Company To Address The Supposed "Deficiencies"**

110.    On November 11, 2025, Brancous responded to the Exclusion Letter and responded to each of the Company's arguments (the "Response Letter").

111.    To the extent that any ambiguity existed as to information provided by Brancous, the Response Letter disclosed and re-disclosed all material information purportedly required by the Company and rectified any purported confusion as to Brancous's Nominees.

112.    Neither Braemar nor the Board objected to the Response Letter and Brancous has received no other communication regarding its Nominees.

113.    Nevertheless, the Company already had filed its Definitive Proxy in which it omits any reference to the Notice and Brancous's Nominees and has not amended that Definitive Proxy to inform shareholders of the Board's exclusion of alternative director nominees.

### G.    Absent Judicial Intervention, Brancous's Voting Rights Will Be Irreparably Harmed By The Board's Misconduct

114.    Pursuant to Maryland Code, Corporations and Associations § 2-405.1, Defendants owe a duty to the Company and stockholders, including Plaintiff, to act in good faith; in a manner reasonably believed to be in the best interests of the corporation; and with the care that an ordinarily prudent person in a like position would use under similar circumstances.

115.    The Board's decision to reject Brancous's Notice and its Nominees does not comport with business judgment and was self-interested, improper, and not entitled to any protection under Maryland law.

116.    Further, the Director Defendants have now made repeatedly clear that the Board has no interest in allowing shareholders to exercise the right to pick the Company's directors.

117.    The Board has repeatedly rejected outside nominations and has used Company resources to pick off dissenting shareholders—and lock them up in cooperation agreements— before facing a contested election.

118.    Again, as to Brancous's nominations, the incumbent directors have resorted to gamesmanship and unlawful conduct to preserve their seats on the Board rather than simply to run a campaign and justify their positions to shareholders.

119.    In so doing, Defendants breached federal securities laws and their fiduciary duties to shareholders. Further, the threat of excluding the validly nominated Nominees from this year's Meeting constitutes irreparable harm that should be remedied before the vote.

## COUNT I
### Violation of Section 14(a) of the Exchange Act and Rule 14a-9

120.    Plaintiff repeats and realleges the allegations in all preceding paragraphs as though fully set forth herein.

121.    Section 14(a) of the Exchange Act provides that it shall be unlawful for any person to solicit any proxy in violation of SEC rules. 15 U.S.C. § 78n(a).

122.    SEC Rule 14a-9 prohibits the solicitation of proxies "by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading." 17 C.F.R. § 240.14a-9(a).

123.    SEC Rule 14a-3 requires that each person solicited shall be concurrently or previously furnished with "[a] publicly-filed preliminary or definitive proxy statement" containing the information specified in Schedule 14A. 17 C.F.R. § 240.14a-3(a)(1).

124.    Item 7(f) of Schedule 14A provides that "[i]f a person is conducting a solicitation that is subject to § 240.14a-19, the registrant must include in its proxy statement a statement

directing shareholders to refer to any other soliciting person's proxy statement for information required by Item 7 of this Schedule 14A with regard to such person's nominee or nominees." 17 C.F.R. § 240.14a-101.

125.    SEC Rule 14a-19, in turn, applies where (as here) there is a contested director election. Rule 14a-19 provides that "the form of proxy of the registrant and the form of proxy of any person soliciting proxies pursuant to this section shall . . . [s]et forth the names of all persons nominated for election by the registrant and by any person or group of persons that has complied with this section and the name of any person whose nomination by a shareholder or shareholder group satisfies the requirements of an applicable state or foreign law provision or a registrant's governing documents as they relate to the inclusion of shareholder director nominees in the registrant's proxy materials" and "[c]learly distinguish between the nominees of the registrant [and] the nominees [of others]." 17 C.F.R. §§ 240.14a-19(e)(1), 240.14a-19(e)(3).

126.    The Company's Definitive Proxy is a solicitation made by the Company on behalf of the Board. The Director Defendants prepared, reviewed, approved, disseminated, and/or caused the Company to disseminate the Definitive Proxy which contained materially false and misleading statements and material omissions.

127.    As alleged herein, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder because on October 30, 2025, Defendants prepared and filed a false and misleading proxy statement, i.e., the Definitive Proxy.

128.    The Definitive Proxy is materially false and misleading as it omits information that the federal securities laws and rules require. Specifically, the Definitive Proxy does not contain the references to Plaintiff's Nominees and materials that Item 7 of Schedule 14A and SEC Rule 14a-19 require.

129.    Additionally, the Company's proxy card, filed in tandem with the Definitive Proxy, violates Rule 14a-19 in that it omits Plaintiff's Nominees.

130.    The false or misleading statements contained in the Definitive Proxy are material in that there is a substantial likelihood that a reasonable Company shareholder would consider them important in understanding their voting rights and deciding how to exercise those rights at the 2025 Annual Meeting and in future elections, including as to the election of directors. Moreover, the omissions in the Definitive Proxy are material because they make other statements in the Definitive Proxy false or misleading.

131.    The Defendants were at least negligent in allowing or authorizing the filing of the Definitive Proxy given that it contains multiple material misstatements and omissions.

132.    Defendants' material misrepresentations and omissions have already caused Plaintiff to suffer harm to its franchise and right to nominate directors.

133.    The Definitive Proxy is an essential link in Defendants' efforts to entrench the current Board in office, limit the influence of its shareholders, and guarantee Defendants' desired electoral outcome at the 2025 Annual Meeting at the direct expense of the Company's shareholders, who will have to endure a longer period of mismanagement and decline in shareholder value under current Company leadership.

134.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

135.    As a direct and proximate result of Defendants' violations of Section 14(a) and Rules 14a-9 and 14a-19, Plaintiff and the Company's shareholders have suffered or will suffer irreparable harm, including a tainted election, the suppression of a valid nomination, and the entrenchment of incumbent directors through unlawful proxy manipulation.

136. Moreover, if left unchecked, there is a substantial likelihood that Defendants will engage in precisely the same misconduct for the Company's 2026 annual meeting of shareholders.

137. Plaintiff has no adequate remedy at law.

138. Plaintiff seeks injunctive and equitable relief, including: (i) a declaration that Director Defendants violated Section 14(a), Rule 14a-9, and Rule 14a-19; (ii) an order requiring the company to correct its proxy and proxy card; (iii) an injunction compelling the Company to accept Plaintiff's nominees and include them in all proxy materials; (iv) an injunction preventing the Company from proceeding with any election tainted by its violations; and (v) such further relief as the Court deems just and proper.

## COUNT II
### Violation of Section 14(a) of the Exchange Act and Rule 14a-19

139. Plaintiff repeats and realleges the allegations in all preceding paragraphs as though fully set forth herein.

140. Defendants' proxy card, filed simultaneously with its Definitive Proxy, omits the names of Plaintiff's validly nominated candidates and fails to distinguish between Defendants' nominees and those of Plaintiff. It therefore violates Rule 14a-19.

141. Defendants' violations of Rule 14a-19 already have caused harm to Plaintiff's fundamental franchise and right to nominate director candidates. The Company's proxy card omission of Plaintiff's Nominees is an essential link in achieving Defendants' desired electoral outcome.

142. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-19 promulgated thereunder.

143. As a direct and proximate result of Defendants' violations of Section 14(a) and Rule 14a-19, Plaintiff and the Company's shareholders have suffered or will suffer irreparable harm,

including a tainted election, the suppression of a valid nomination, and the entrenchment of incumbent directors through unlawful proxy manipulation.

144.    Moreover, if left unchecked, there is a substantial likelihood that Defendants will engage in precisely the same misconduct for the Company's 2026 annual meeting of shareholders.

145.    Plaintiff has no adequate remedy at law.

146.    Plaintiff seeks injunctive and equitable relief, including: (i) a declaration that Director Defendants violated Section 14(a), Rule 14a-9, and Rule 14a-19; (ii) an order requiring the company to correct its proxy and proxy card; (iii) an injunction compelling the Company to accept Plaintiff's nominees and include them in all proxy materials; (iv) an injunction preventing the Company from proceeding with any election tainted by its violations; and (v) such further relief as the Court deems just and proper.

## COUNT III
## Breach Of Fiduciary Duty

147.    Plaintiff repeats and realleges the allegations in all preceding paragraphs as though fully set forth herein.

148.    Director Defendants owe the Company and its shareholders fiduciary duties of care, loyalty, and good faith under Maryland law. As directors of a Maryland corporation, they are required to act "in good faith," "in a manner [they] reasonably believe to be in the best interests of the corporation," and with the care that "an ordinarily prudent person in a like position would use under similar circumstances." See Md. Code Ann., Corps. & Ass'ns § 2-405.1.

149.    Maryland law further prohibits directors from using their corporate powers for the purpose of entrenching themselves, interfering with the stockholder franchise, or frustrating stockholders' legitimate rights. Directors violate their fiduciary obligations when they employ corporate machinery to manipulate or obstruct the electoral process to maintain control.

150.    Plaintiff is a record and street name stockholder of the Company and timely submitted a stockholder nomination notice materially compliant with (i) the Company's Advance Notice Requirements, including all requirements for disclosures, timing, and form; and (ii) applicable federal law, including Rule 14a-19 and all relevant proxy rules.

151.    Plaintiff's nomination notice satisfied all requirements and contained no false, misleading, or materially incomplete information. The Board had no authority under any Bylaw provision, statute, or regulation to reject it.

152.    Despite the nomination notice being fully compliant, the Board improperly rejected Plaintiff's nomination notice on pretextual, immaterial, or contrived grounds not supported by the Company's Bylaws or state or federal law.

153.    The primary purpose of the Board's conduct was to entrench incumbent directors, suppress competition for board seats, and prevent stockholders from exercising their fundamental right to participate in corporate elections.

154.    The Board's conduct constituted a breach of the duty of loyalty because it involved self-interested and bad-faith actions designed to maintain control rather than advance the best interests of the Company and its stockholders.

155.    The Board's conduct also constituted a breach of the duty of care because it failed to make a reasonable, good-faith inquiry into the validity of the nomination notice and instead relied on arbitrary or unsupported bases for rejection.

156.    The Board's refusal was ultra vires, inconsistent with the Company's governing documents, and in violation of federal law, further evidencing that the directors acted in bad faith.

157.    As a direct and proximate result of the Board's breaches of fiduciary duty, Plaintiff has suffered and will continue to suffer irreparable harm, including the impairment of the

stockholder franchise, the loss of a fair corporate election, and the entrenchment of an unaccountable board.

158.    No adequate remedy at law exists. Plaintiff is entitled to equitable and injunctive relief, including (i) a declaration that Plaintiff's nomination notice was valid and compliance; (ii) an order requirement the Company to accept Plaintiff's nominees and include them on the Company's proxy statement and proxy card; (iii) an injunction preventing the Board from further interfering with Plaintiff's nomination rights and resetting the director election; and (iv) such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Brancous, LP1 demands judgment as follows:

A.    Issuing the forms of declaratory relief set forth above, including without limitation a declaration that Plaintiff's Notice satisfied the Bylaws and applicable law;

B.    Enjoining the 2025 Annual Meeting scheduled for December 15, 2025 and declaring void all votes cast for Defendants to date;

C.    Setting a 2025 Annual Meeting date that will permit shareholders adequate time to recast their votes in consideration of all valid nominees, including Brancous's Nominees;

D.    Awarding Plaintiff its reasonable costs and expenses incurred in this action, including attorneys' fees and other legal costs; and

E.    Granting Plaintiff such equitable, injunctive, or other further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 3, 2025

*/s/ Keith M. Lusby*
**GEBHARDT & SMITH LLP**
Keith M. Lusby (Bar No. 05596)
One South Street, Suite 2200
Baltimore, Maryland 21202
klusby@gebsmith.com
(410) 385-5028

**MORRIS KANDINOV LLP**
Aaron T. Morris (*pro hac forthcoming*)
305 Broadway, 7th Floor
New York, New York 10007
aaron@moka.law
(332) 240-4024

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BRANCOUS, LP1

                Plaintiff,

       v.

MONTY BENNETT
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

RICHARD STOCKTON
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

STEFANI DANIELLE CARTER
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

MARY CANDACE EVANS
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

MATHEW RINALDI
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

Civil Action No.

(cont.)

REBECA ODINO-JOHNSON
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

REBECCA MUSSER
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

KELLIE SIRNA
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

BOB GHASSEMIEH
  c/o Braemar Hotels & Resorts Inc.
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

                  Defendants,
        and

BRAEMAR HOTELS & RESORTS INC.,
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street – Suite 820
  Baltimore, MD 21202

                  Nominal Defendant

## <u>VERIFICATION OF ALEJANDRO MALBRAN</u>

I, Alejandro Malbran, being duly sworn, do hereby state as follows:

1.      I am the Managing Partner of Brancous, LP1 ("Brancous"), the Plaintiff in the above-captioned action. Brancous has been a continuous holder of Braemar Hotels & Resorts Inc.

2

common stock at the time of the wrongs complained of in the Verified Complaint (the "Complaint"). I have authority to act on behalf of Brancous.

2.    I have reviewed the Complaint, and I have authorized its filing.

3.    The facts alleged in the Complaint are true and correct to the best of my knowledge, information, and belief,

I declare under penalty of perjury under the laws of the United States and State of Maryland that the foregoing is true and correct.

Executed on the  3rd  day of December, 2025

Sworn and subscribed before me
on this 3rd    day of December, 2025

_alejandro malbran_

Alejandro Malbran

Gerzan Chau

Notary Public

state of Texas

County of Harris



**Gerzan Javier Chau**

ID NUMBER
135531219
COMMISSION EXPIRES
September 5, 2029

Electronically signed and notarized online using the Proof platform.