UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANCOUS, LP1<br><br>              Plaintiff,<br><br>    v.<br><br>BRAEMAR HOTELS & RESORTS INC., et al.<br><br>              Defendants, | Civil Action No. 25-cv-03971-SAG |

PLAINTIFF BRANCOUS, LP1'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>

                                **GEBHARDT & SMITH LLP**
                                Keith M. Lusby (Bar No. 05596)
                                One South Street, Suite 2200
                                Baltimore, Maryland 21202
                                klusby@gebsmith.com
                                (410) 385-5028

                                **MORRIS KANDINOV LLP**
                                Aaron T. Morris (*pro hac forthcoming*)
                                Andrew W. Robertson (*pro hac forthcoming*)
                                Jonathan R. Voegele (*pro hac forthcoming*)
                                305 Broadway, 7th Floor
                                New York, New York 10007
                                aaron@moka.law
                                andrew@moka.law
                                jonathan@moka.law
                                (212) 431-7473

                                *Attorneys for Plaintiff Brancous, LP1*

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................................... 2

      A.     The Board's History of Entrenchment ................................................................... 2

      B.     Braemar's Bylaws Require Advance Notice For Director Nominations ............... 3

      C.     Brancous Validly Nominates Directors Pursuant To The Bylaws ......................... 3

      D.     Braemar's Board Invents Deficiencies In
            The Nomination Notice And Excludes Brancous's Nominees .............................. 3

      E.     Brancous Addresses The Board's "Deficiencies" And The
            Board Does Not Object Or Respond, Necessitating This Action .......................... 4

ARGUMENT .................................................................................................................................. 5

I.     THE COURT SHOULD GRANT IMMEDIATE INJUNCTIVE RELIEF
      TO PREVENT DEFENDANTS FROM DISENFRANCHISING SHAREHOLDERS ... 5

A.    The Risk Of Irreparable Harm And The Balance
       Of Equities Favor Immediate Injunctive Relief For Brancous .......................................... 6

B.    Brancous Is Likely To Succeed On The Merits Of Its Claims ......................................... 7

C.    Injunctive Relief Would Further The Public Interest ..................................................... 11

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Ancora Cap. & Mgmt. Grp., LLC v. Gray*
   55 F. App'x 111 (4th Cir. 2003) ...................................................................................5

*Ciena Corp. v. Jarrard,*
   203 F.3d 312 (4th Cir. 2000) .......................................................................................5

*Hubbard v. Hollywood Park Realty Enters.,*
   1991 WL 3151 (Del. Ch. 1991) ...................................................................................6

*Intelus v. Barton*,
   7 F. Supp.2d 635 (D. Md. 1998) ..................................................................................5

*Karp v. First Conn. Bancorp, Inc.*,
   69 F.4th 223 (4th Cir. 2023) ..................................................................................... 8-9

*Kellner v. AIM ImmunoTech Inc.*,
   307 A.3d 998 (Del. Ch. 2023), *aff'd in part, rev'd in part,* 320 A.3d 239 (Del. 2024).... 8, 10-11

*Kim v. Cedar Realty Trust, Inc.*,
   116 F.4th 252 (4th Cir. 2024) ....................................................................................10

*Legend Night Club v. Prince George's Cnty. Bd. of License Commissioners*,
   2006 WL 8457032 (D. Md. 2006) ..............................................................................5

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ....................................................................................................9

*Pell v. Kill,*
   135 A.3d 764 (Del. Ch. 2016) .....................................................................................6

*Schnell v. Chris-Craft Indus., Inc.*,
   285 A.2d (Del. 1971) ........................................................................................... 10-11

*Tchatchou v. India Globalization Cap. Inc.*,
   2021 WL 307415 (D. Md. Jan. 29, 2021). ..................................................................4

*Telcom-SNI Inv'rs, L.L.C. v. Sorrento Networks, Inc.*,
   2001 WL 1117505 (Del. Ch. Sept. 7, 2001) ...............................................................6

*TSC Indus., Inc. v. Northway*, *Inc.*,
   426 U.S. 438 (1976) ....................................................................................................9

*Wachovia Ins. Servs., Inc. v. Hinds, No.*,
  2007 WL 6624661 (D. Md. Aug. 30, 2007) ...............................................................................11

**Statutes**

15 U.S.C. § 78n(a)(1) ......................................................................................................................7

17 C.F.R. § 240.14a-3 ............................................................................................................1, 4, 8

17 C.F.R. § 240.14a-9 ......................................................................................................... 1, 4, 8-9

17 C.F.R. § 240.14a-19 ............................................................................................................ *passim*

17 C.F.R. § 240.14a-101 .................................................................................................................8

Md. Code Corps. & Ass'ns § 2-405.1 ...........................................................................................10

**Other Authorities**

Universal Proxy, Release No. 34419,
  2021 WL 5545055 (Nov. 17, 2021) ................................................................................................8

Plaintiff Brancous, LP1 ("Brancous" or "Plaintiff") respectfully submits this Memorandum of Law in Support of Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, which seeks to enjoin Defendants from proceeding with the Company's[1] 2025 Annual Meeting on December 15, 2025 and requiring the Company and the Board to correct their materially misleading proxy materials, accept Plaintiff's valid director nominations, issue compliant universal proxy materials including Plaintiff's nominees, and hold a fair and untainted director election. This emergency relief is necessary to prevent imminent, irreparable harm to Brancous's shareholder franchise and rights under the Securities Exchange Act of 1934 and its Rules.

## INTRODUCTION

As set forth in the Verified Complaint (ECF No. 1), the Director Defendants have engaged in an unlawful campaign to entrench themselves in office and suppress valid shareholder director nominations. After receiving a timely and compliant nomination notice from Plaintiff on October 17, 2025, the Board invented a series of pretextual "deficiencies" in violation of Maryland law, the Company's Bylaws, Section 14(a) of the Exchange Act, and Rules 14a-3, 14a-9, and 14a-19. On October 30, 2025—the same day the Board notified Brancous it rejected Brancous's Nomination Notice—the Company issued a Definitive Proxy and proxy card that omits all reference to Brancous's nominees, fails to disclose the existence or rejection of Brancous's nomination notice, fails to include Brancous's nominees on the proxy card, and fails to comply with the Exchange Act's mandatory universal proxy rules under Exchange Act Rule 14a-19.

---

[1] Capitalized terms used but not defined herein have the same meaning ascribed to them in the Verified Complaint (ECF No. 1).

Absent judicial intervention, shareholders will be irreparably harmed: they will vote in an election tainted by materially misleading omissions, will be deprived of the information federal law requires them to receive, and will have no ability to vote for Brancous's validly nominated candidates. The Annual Meeting is scheduled for December 15, 2025. Emergency relief is required to preserve the status quo and protect the shareholder franchise.

For those reasons, as set forth below in more detail below, the Court should grant immediate injunctive relief to halt the Defendants' wrongdoing and set a schedule to hear whether to issue a preliminary injunction at a later date.

## FACTUAL BACKGROUND

### A. The Board's History of Entrenchment

Braemar is a publicly traded Maryland real estate investment trust that manages a portfolio of luxury hotels and resorts.[2] ¶ 22. Since its inception in 2013, when it was spun out from the Ashford Hospitality Trust, the Company's stock has fallen almost 90%. ¶ 23-24. The Company is externally managed by Ashford Inc., whose Founder, CEO and Chairman is Monty Bennett, the incumbent chairman of Braemar's Board. ¶ 3. Bennett, through Ashford, has collected hundreds of millions of dollars while the Company has performed abysmally. Nevertheless, the Board continues to renew Ashford's Advisory Agreement with the Company. ¶ 5. In 2024 and again earlier this year, the Board aggressively contested any shareholders who nominate alternative director candidates. ¶¶ 26-31.

---

[2] Citations in the form of "¶ ___" are to the Verified Amended Complaint (ECF No. 23).

     **B.**     **Braemar's Bylaws Require
Advance Notice For Director Nominations**

The Company's Bylaws set forth Advance Notice Requirements for nominating directors. *See* Ex. A (ECF No. 1-1) art. I § 11; ¶¶ 33-48. To nominate an individual, the nominating stockholder must be a stockholder of record at the time of giving notice and at the time of the annual meeting, the notice must be timely, and the notice must include a number of disclosures. Ex. A (ECF No. 1-1) art I § 11(a)(1)-(3); ¶ 34-48. The notice must also be accompanied by a completed Questionnaire for Directors Officers and Controlling Persons of Braemar Hotels & Resorts Inc. for each nominee. Ex. A (ECF No. 1-1) art. I § 11(a)(3); ¶ 46.

     **C.**     **Brancous Validly Nominates Directors Pursuant To The Bylaws**

On October 17, 2025, Brancous sent the Company its Notice nominating four highly qualified directors for election to the Board at the Annual Meeting to be held December 15, 2025. ¶ 49 & Ex. B (ECF No. 1-2). The Notice complied in all respects with federal law, applicable SEC rules and guidance, as well as the Company Bylaws, and Brancous and its Nominees provided all required information and made the material disclosures required by the Bylaws and the Exchange Act Rules, including Rule 14a-19. ¶ 53.

     **D.**     **Braemar's Board Invents Deficiencies In
The Nomination Notice And Excludes Brancous's Nominees**

On October 30, 2025, the Board sent an Exclusion Letter rejecting Brancous's Nominees as invalid based on alleged deficiencies not supported by the Bylaws. ¶ 54. The two primary reasons for rejecting the Nomination Notice were a purported failure to prove Brancous was a record stockholder and that the Notice was untimely delivered to the Company.

Yet, in correspondence with the SEC the Company explicitly acknowledges Brancous is a record stockholder. ¶ 56-60. The purported timeliness issue, too, was manufactured by the Board,

3

which manipulated the Annual Meeting date, under the thin cover of the Bylaws, to create an artificially narrow nomination window months prior to the Annual Meeting. ¶¶ 61-71. As detailed in the Verified Complaint and herein, the rejection of the Notice was wholly without merit and solely intended to avoid competing nominees in the upcoming director election.

  **E.**  **Brancous Addresses The Board's "Deficiencies" And The Board Does Not Object Or Respond, Necessitating This Action**

On November 11, 2025, Brancous sent its Response Letter that addressed each of the Company's arguments. ¶ 110. The Response Letter disclosed and re-disclosed all material information and rectified any purported confusion. ¶ 111. Neither the Company nor the Board objected to or replied to the Response Letter. Instead, the Company plowed forward with its misleading Definitive Proxy and proxy card, omitting any reference to the Notice, the Board's rejection of the Notice, or Brancous's Nominees. *See* Braemar Hotels & Resorts Inc., Definitive Proxy Statement (Form DEF 14A) (Oct. 30, 2026), https://www.sec.gov/Archives/edgar/data/1574085/000157408525000111/bhr-20251030.htm.[3] The Company never amended the Definitive Proxy or the proxy card to inform shareholders of the Board's exclusion of alternative director nominees. *Id.*

On December 4, 2025, Brancous filed this action asserting breach of fiduciary duty against the Director Defendants and violations of Section 14(a) of the Exchange Act and Rule 14a-3, 14a-9, and 14a-19 against all Defendants.

---

[3] District courts may take judicial notice of matters of public record, such as the Company's SEC filings. *Tchatchou v. India Globalization Cap. Inc.*, 2021 WL 307415, at *5 (D. Md. Jan. 29, 2021).

**ARGUMENT**

I. **THE COURT SHOULD GRANT IMMEDIATE INJUNCTIVE RELIEF TO PREVENT DEFENDANTS FROM DISENFRANCHISING SHAREHOLDERS**

Temporary restraining orders are generally available when a party might suffer irreparable harm before a hearing on a motion for preliminary injunction can be held. *Intelus Corp. v Barton*, 7 F. Supp. 2d 635, 638 (D. Md. 1998). "The order is designed to preserve status quo until there is an opportunity to hold a hearing on the application for preliminary injunction." *Id*. (quotation omitted.)

The first two factors a court considers in deciding whether to grant injunctive relief are the threat of irreparable harm to the plaintiff should the court not issue an injunction and the likely harm to the defendant if an injunction is ordered. *See, e.g.*, *Intelus*, 7 F. Supp. 2d at 639; *Ciena Corp. v. Jarrard*, 203 F.3d 312, 323 (4th Cir. 2000) ("[T]he balancing of hardships should precede any consideration of the likelihood of success." (quotations omitted)). The court must balance these two factors. *Legend Night Club v. Prince George's Cnty. Bd. of License Commissioners*, 2006 WL 8457032, at *2 (D. Md. 2006) ("The balance of hardship test can be viewed as the Court determining (1) any irreparable harm that would be sustained by the Plaintiffs if a preliminary injunction or TRO was erroneously denied, and balancing that harm against (2) any irreparable harm that would be sustained by the Defendant if a preliminary injunction or TRO was erroneously granted."). In the Fourth Circuit, "[t]he two most important factors are probability of irreparable injury to the plaintiff without a decree and likelihood of harm to the defendant with a decree." *Ancora Cap. & Mgmt. Grp., LLC v. Gray*, 55 F. App'x 111, 113 (4th Cir. 2003). Then, the court considers the third factor, the plaintiff's likelihood of success on the merits. *Ciena Corp.*, 203 F.3d at 323. The plaintiff has a lessened burden in showing its likelihood of success in proportion to the

balance of harm weighing in favor of the plaintiff. *Id*. Last, the court considers the fourth factor, the public interest. *Id*. at 322.

As set forth herein, Brancous is entitled to a temporary restraining order and preliminary injunction because (1) Brancous will suffer irreparable injury if injunctive relief is not granted immediately; (2) the likely harm to Defendants is slight or nonexistent; (3) Brancous is likely to succeed on the merits; and (4) the requested relief is in the public interest.

### A.  The Risk Of Irreparable Harm And The Balance Of Equities Favor Immediate Injunctive Relief For Brancous

Brancous and the Company's stockholders will suffer substantial and immediate harm if a temporary restraining order and preliminary injunction are not granted.

As an initial matter, disenfranchisement and deprivation of shareholder voting rights is not easily quantified and constitutes irreparable harm for purposes of obtaining an injunction. *See, e.g.*, *Pell v. Kill*, 135 A.3d 764, 793 (Del. Ch. 2016) (finding "loss of voting power constitutes irreparable injury" where management "pre-ordain[ed]" the results of a shareholder meeting by reducing the size of the board and preventing shareholders from exercising their voting rights to elect three directors); *Telcom-SNI Inv'rs, L.L.C. v. Sorrento Networks, Inc.*, 2001 WL 1117505, at *9 (Del. Ch. Sept. 7, 2001) ("Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares."); *Hubbard v. Hollywood Park Realty Enters., Inc.*, 1991 WL 3151, at *5 (Del. Ch. 1991) (enjoining advance-notice bylaw while observing "a denial of injunctive relief would result in irreparable harm by thwarting shareholders' voting rights") (collecting cases).

Here, once the December 15, 2025 director election closes, the harm cannot be undone. Shareholders will vote based on false and misleading information. Brancous's Nominees will never appear on the ballot. Ultimately, Exchange Act Rule 14a-19, which requires the Company

to include Brancous's nominees, will be nullified. Money damages cannot restore a fair corporate election because shareholders will irretrievably lose the ability to vote for Brancous's Nominees; the Board's self-entrenchment will be cemented; the election results will be irrevocably tainted; the Company's governance could be distorted for years; and Brancous's rights under the Exchange Act Rules will be permanently frustrated as to the 2025 Annual Meeting. This is significant, lasting, and irreparable harm.

Defendants, on the other hand, suffer no cognizable harm from being required to obey federal law. There is simply no legal hardship to require Defendants to apply the Company's Bylaws fairly, comply with the Exchange Act and its Rules, correct false and misleading statements in the Company's proxy materials, and conduct a lawful election.

Because harm to the shareholder franchise is recognized as irreparable and because Defendants suffer little or no hardship from being required to comply with federal law and hold a lawful election, the balance of equities overwhelmingly favors Brancous and immediate injunctive relief.

### B.  **Brancous Is Likely To Succeed On The Merits Of Its Claims**

#### 1.  **Defendants Violated Section 14(a) Of The Exchange Act**

Brancous is likely to succeed on its claims under Section 14(a) of the Exchange Act, which prohibits false or misleading statements in proxy materials sent to shareholders.

Section 14(a) of the Exchange Act makes it unlawful to solicit shareholder votes via proxy in violation of Exchange Act Rules. 15 U.S.C. § 78n(a)(1). Here, the Defendants' proxy materials violated Section 14(a) because they omitted information required by at least three Exchange Act Rules promulgated under Section 14(a): (1) the Universal Proxy Rules under Rule 14a-19, which require the proxy to "[s]et forth the names of all persons nominated for election" by Braemar *and*

Brancous, and provide a means to vote for all such nominees, 17 C.F.R. § 240.14a-19[4]; (2) Rule 14a-9, which prohibits the inclusion of false or misleading statements or omissions in proxy materials, including the "[f]ailure to so identify a proxy statement, form of proxy and other soliciting material as to clearly distinguish it from the soliciting material of any other person or persons soliciting for the same meeting or subject matter," 17 C.F.R. § 240.14a-9; and (3) Rule 14a-3, which requires that the definitive proxy include "a statement directing shareholders to refer to [Brancous's] proxy statement," 17 C.F.R. §§ 240.14a-3(a)(1), 240.14a-101.

To prevail under Section 14(a), a plaintiff must show: (1) the proxy statement contained a material misrepresentation or omission; (2) that the misstatement or omission caused the plaintiff injury; (3) that the proxy solicitation was an "essential link" in the accomplishment of the transaction; and (4) the requisite state of mind. *See Karp v. First Conn. Bancorp, Inc.*, 69 F.4th 223 (4th Cir. 2023).

The first element is easily satisfied. Here, in contravention of SEC Rules 14a-19, 14a-9, and 14a-3, Braemar's proxy materials (1) omit Brancous's validly nominated candidates, (2) conceal the existence of a contested election, (3) misrepresent that the Board's slate is the only slate up for election, and (4) fail to provide disclosures required by mandatory Exchange Act Rules

---

[4] The Universal Proxy Rules' central purpose is to allow shareholders to "vote by proxy in the same manner as they could do if attending a shareholder meeting." Universal Proxy, Release No. 34419, 2021 WL 5545055 (Nov. 17, 2021). Prior to the Universal Proxy Rules, in contested elections shareholders voting by proxy were limited to voting only for a particular slate of candidates, without the ability to "mix and match" different director candidates in the manner that could be done if attending the meeting in person. The Universal Proxy Rules solve this problem by requiring both sides to set forth the names of *all* candidates, thereby "expand[ing] the voting alternatives of shareholders" and "allow[ing] all shareholders to vote for their preferred candidate[s]." *Id.*; *see also Kellner v. AIM ImmunoTech Inc.*, 307 A.3d 998, 1023 (Del. Ch. 2023) (Rule 14a-19 requires "the company [to] include the dissident nominees on a universal proxy card, allowing stockholders to mix and match between slates"), *aff'd in part, rev'd in part,* 320 A.3d 239 (Del. 2024).

governing universal proxy contests. Alternative director nominees are certainly a fact that a reasonable investor would view as altering the "total mix" of information available. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (a fact omitted from a proxy statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available").

These material misrepresentations and omissions plainly caused harm to Brancous because the proxy solicitation was an essential link to the challenged action, namely the director election. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970) (holding that a determination of materiality of the defect in solicitation materials can alone establish causation in cases where a shareholder vote is necessary). Here, there is no path to electing directors other than the Company's misleading solicitation. A corporate election is, by its nature, accomplished through proxy voting. Thus, where a director election is conducted using a misleading proxy statement and proxy card, the solicitation is not merely related to the outcome, it is the predominant causal mechanism by which the outcome is achieved. This satisfies Section 14(a). *See, e.g.*, *id.*

The final element is also satisfied. Section 14(a) requires at least a showing of negligence. *See Karp*, 69 F.4th at 229. By failing to include required information, failing to disclose dissident nominees, and filing a proxy inconsistent with Rules 14a-9 and 14a-19, Defendants at the very least acted negligently. Indeed, the facts strongly suggest intentional suppression of dissent. Either way, Section 14(a)'s standard is satisfied. Accordingly, Brancous is likely to succeed on the merits of its Section 14(a) claims.

## 2. Director Defendants Breached Their Fiduciary Duties

Plaintiff is also likely to succeed on its claim that the Director Defendants breached their fiduciary duties under Maryland law by manipulating and applying the Company's Bylaws in an inequitable, unreasonable, and unfair manner for the purpose of entrenching themselves in office.

Maryland law imposes duties of loyalty, good faith, and fairness. *See* Md. Code Corps. & Ass'ns § 2-405.1. Although Maryland law provides directors a measure of discretion, it does not permit them to wield bylaws as a weapon. Here, the Director Defendants' manipulation of the Bylaws—manufacturing technical obstacles, inventing immaterial deficiencies, and contorting the timing provisions to suppress nominations—easily shows their breach of fiduciary duties owed to Brancous. Delaware law is particularly instructive on these circumstances.[5] Delaware courts have emphasized that bylaw provisions—even if facially valid—may not be applied inequitably to entrench directors or block shareholder nominations. *Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del. 1971) ("[I]nequitable action does not become permissible simply because it is legally possible."); *Kellner*, 320 A.3d at 259 (advance notice bylaws "must be twice-tested—first for legal authorization, and second by equity").

Defendants' conduct is similar to the conduct condemned in *Schnell*. There, the board advanced the shareholder meeting date to preclude dissident nominations, conduct the court held was inequitable, even though technically permitted by the bylaws. *Id.* at 439 ("It is not to be expected that management will attempt to advance the date in order to obtain an inequitable advantage in the contest."). The Director Defendants engaged in nearly identical behavior when they inexplicably moved the 2025 Annual Meeting date up by several months, then reverted to the original December 15, 2025 date after eliminating a dissident nomination, and now insist that an

---

[5] "Lacking precedent, Maryland courts look to Delaware courts for guidance." *Kim v. Cedar Realty Trust, Inc.*, 116 F.4th 252, 267 n.17 (4th Cir. 2024) (collecting cases).

otherwise timely nomination for the December 15, 2025 Annual Meeting was untimely because of the earlier, abandoned meeting date. This is the very type of inequitable manipulation that courts reject. This Court should reject it too.

Because Defendants manipulated the Bylaws in an inequitable and unreasonable manner for the primary purpose of entrenching themselves in office, Plaintiff is likely to succeed on its breach of fiduciary duty claim under Maryland law. The Board's conduct squarely falls within the line of cases condemning manipulative use of corporate machinery to frustrate shareholder voting rights. *See Schnell*, 285 A.2d at 439; *Kellner*, 320 A.3d at 259.

### C. Injunctive Relief Would Further The Public Interest

The relief requested herein is in line with the public interest, as the "public interest prong has been equated with preserving the status quo until the merits can be fully considered by the trial court." *Wachovia Ins. Servs., Inc. v. Hinds, No*. 2007 WL 6624661, at *9 (D. Md. Aug. 30, 2007). Moreover, the public interest is served by ensuring compliance with federal securities law, maintaining integrity and fairness in shareholder elections, and preventing corporate boards from manipulating the voting process. In fact, the Universal Proxy Rules were implemented specifically to prevent the type of board misconduct alleged in this case. Enforcing them here would promote transparency, vindicate the shareholder franchise, and protect markets and shareholders. Ultimately, an injunction is required merely to ensure that the vote is fair and legitimately determines the Company's leadership from all available nominees.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter a temporary restraining order to:

1. Enjoin the 2025 Annual Meeting scheduled for December 15, 2025 and declare void all votes cast to date; and

2. Issue a schedule on hearing Plaintiff's request for a preliminary injunction.

Upon hearing, Plaintiff further requests that the Court enter a preliminary injunction to:

1. Order the 2025 Annual Meeting rescheduled on a date certain that permits all shareholders to vote on all director nominees;

2. Enjoin Defendants from relying on the current Definitive Proxy or proxy card and any votes cast pursuant to the defective proxy materials;

3. Order the Company to accept Plaintiff's nominations as valid and timely;

4. Order dissemination of a corrected proxy statement and universal proxy card containing Plaintiff's nominees;

5. Grant such other and further relief as the Court deems just and proper.

Dated: December 5, 2025

*/s/ Keith M. Lusby*
**GEBHARDT & SMITH LLP**
Keith M. Lusby (Bar No. 05596)
One South Street, Suite 2200
Baltimore, Maryland 21202
klusby@gebsmith.com
(410) 385-5028

**MORRIS KANDINOV LLP**
Aaron T. Morris (*pro hac forthcoming*)
Andrew W. Robertson (*pro hac forthcoming*)
Jonathan R. Voegele (pro hac forthcoming)
305 Broadway, 7th Floor
New York, New York 10007
aaron@moka.law
andrew@moka.law
jon@moka.law
(212) 431-7473

*Attorneys for Plaintiff Brancous, LP1*

12