IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
                          NORTHERN DIVISION

BRANCOUS, LP1,                          )
                                        )
          Plaintiff,                    )
     vs.                                ) CIVIL NO.:
                                        ) 1:25-cv-03971-SAG
BRAEMAR HOTELS & RESORTS INC.,          )
et al.,                                 )
                                        )
          Defendants.                   )
_____)

                                        Baltimore, Maryland
                                        December 11, 2025
                                        10:00 a.m.

                     TRANSCRIPT OF PROCEEDINGS
                         **MOTIONS HEARING**
          BEFORE THE HONORABLE STEPHANIE A. GALLAGHER


For the Plaintiff:

     Keith M. Lusby, Esquire
       Gebhardt & Smith, LLP
       One South Street, Suite 2200
       Baltimore, MD 21202

     Jonathan R. Voegele, Esquire
       Morris Kandinov LLP
       305 Broadway, 7th Floor
       New York, NY 10007

For the Defendants:

     Peter J. Martinez, Esquire
       Hogan Lovells US LLP
       100 International Drive, Suite 2000
       Baltimore, MD 21202

     Glenn M. Kurtz, Esquire
     Camille M. Shepherd, Esquire
       White & Case LLP
       1221 Avenue of the Americas
       New York, NY 10020-1095

     (Computer-aided transcription of stenotype notes)

P R O C E E D I N G S

(9:56 a.m.)

THE COURT:  Good morning, everyone.  Please be seated.  We are here in Brancous, LP1 versus Braemar Hotels and Resorts Incorporated.  It's case number 25-3971-SAG.  We are here for a hearing on the plaintiff's motion for temporary restraining order and preliminary injunction.

Counsel, would you please identify yourselves for the record.

MR. LUSBY:  Good morning, Your Honor.  Keith Lusby on behalf of Brancous, LP1.  Your Honor, with me this morning is Jonathan Voegele whose submission for pro hac admission is currently pending before the Court, and I'd ask if Your Honor will permit him to be heard today while his motion is pending.

THE COURT:  Yes.  I know there are a couple of motions pending, but given how quickly this came up, I will allow anyone whose motion is pending who wishes to be heard to be heard this morning.

MR. LUSBY:  Thank you, Your Honor.

THE COURT:  All right.

MR. MARTINEZ:  Good morning, Your Honor.  Nice to see you.  Peter Martinez from Hogan Lovells on behalf of defendant Braemar Hotels and Resorts, Incorporated.  With me at counsel table are Glenn Kurtz and Camille Shepherd from

White & Case.  Their motions for pro hac vice have been granted.  Mr. Kurtz will be arguing today on behalf of the defendant.

THE COURT:  All right.  Good morning to all of you as well.

MR. KURTZ:  Good morning, Your Honor.

THE COURT:  Okay.  Well, I am open to hearing argument.  I guess because it's plaintiff's motion, why don't you go first.

MR. VOEGELE:  Good morning, Your Honor.  Defendants' opposition attempts to transform this shareholder franchise dispute into one about delay and one about speculation over parties' motives, but what matters for this Court is much simpler.

Did the defendants manipulate the bylaws with self-serving technicalities in a way that deprived Brancous of its fundamental right to nominate directors?  And will irreparable harm result if the meeting proceeds under these tainted conditions?  The answer to both is an undeniable yes.

Defendants' delay argument collapses on scrutiny. Defendants spend many pages arguing that Brancous waited six months to bring this action.  That's simply not the case. Their own brief also admits that the first actionable event, the exclusion letter, occurred on October 30th.  Brancous then

attempted to appease the Board's position by submitting additional detail and argument about that exclusion letter and offered the Board five business days to respond.  The Board never responded.

Brancous then tried to engage counsel in discussions to resolve the dispute.  When it became apparent that no resolution could be had, Brancous filed this action.  The central issue here is the fairness and legality of the election.  Defendants --

THE COURT:  Are you saying that I should just ignore the delay or excuse it because of the reasons that you stated?  Because certainly at the very latest, the case could have been filed after you received the letter in October.

MR. VOEGELE:  Yes, Your Honor.  This Board has a history of resolving these kinds of disputes, and so we did not want to bring needless litigation.  We thought: Let's engage in some colloquy with the Board and see if they'll accept our nomination notice, and they simply didn't respond.  So then we attempted to engage counsel.  Counsel engaged in a limited fashion, and we realized that this action was necessitated.  We filed it promptly after the November holiday.  So --

THE COURT:  Okay.  All of that puts us in a position where now we're here just a few days before the vote is supposed to occur.

MR. VOEGELE:  That's right, Your Honor --

THE COURT:  There was some exigency that seems like it should have been evident back in October to get this decided, especially since it was so late in October by the time the slate was submitted and then eventually rejected.

MR. VOEGELE:  Well, Your Honor, the Board also waited two weeks to inform us that they intended to reject our notice, so this delay is not only at plaintiff's feet.  It's also at the Board's feet.

THE COURT:  What caused it to be -- what caused the delay from June to October to submit the filing in the first place?

MR. VOEGELE:  That's right, Your Honor.  I think this focus on some notion that there was six months' delay is a bit of a red herring.  The June date is simply an operative. Once the Board decided to move the annual meeting date, Brancous was operating under the assumption that it would honor the 60-day notice requirement for the reset annual meeting date.  So I would suggest that the six months is totally beside the point.  What matters here is the October 30th timeline until today.

THE COURT:  Which is still a significant delay.

MR. VOEGELE:  It's somewhat of a delay, yes, Your Honor, but it's really only a delay because we were trying to engage with defendants to resolve this dispute before coming

to court.

I wouldn't say the delay should be measured by the number of days prior to the meeting either.  It's a 60-day timeline. The Board took two weeks to delay in rejecting our notice and then simply didn't respond after we submitted additional material.

The Board also could have sent a letter the next day and said no.  They wouldn't even have had to have gilded the letter.  It could have been straightforward, and then we would have known that the dispute was ripe at that time.

THE COURT:  All right.  Continue.

MR. VOEGELE:  What I would ask the Court to focus on, the central issue here is the fairness and legality of the election.  Defendants narrate supposed technicalities that go well beyond material disclosure, and that's why the real question here should be whether the company is using its bylaws as a weapon to prevent a contested election.

And defendants' brief proves Brancous's core points.  The Board unilaterally moved the meeting, kept the original 10-day nomination deadline without necessity, and then used that decision to block Brancous's nominations.

THE COURT:  Although there was someone who did successfully submit nomination -- a nomination in the original time frame; is that correct?

MR. VOEGELE:  That's right, Your Honor.  There was

another dissident shareholder who submitted nominations within that ten-day time frame which, by the way, occurred over the Memorial Day holiday weekend in May.  The Board negotiated with that shareholder, gave that shareholder a seat on the Board, and then delayed the annual meeting until December.

THE COURT:  Okay.

MR. VOEGELE:  The Board also has given no rationale for the postponement of the meeting by nearly five months after the nomination deadline had passed.  It set the annual meeting for the original December 15th, 2025, date and when receiving Brancous's nomination under the deadline for that date, it rejected it as untimely.  All this, on top of two years of history of rejecting other sizable dissident shareholder nominations, should instruct the Court to grant the temporary restraining order today.  This is exactly the sort of conduct that courts reject.

THE COURT:  Now the injunction you're seeking, you made reference to status quo in your memorandum.  Is this a mandatory injunction or a prohibitory injunction?  Because it seems to me really that you're not seeking to preserve the status quo.  The status quo that we are looking at today is that there's an election scheduled for next week.  It seems to me you're asking for a change to be made to the status quo. Do I have that correct?

MR. VOEGELE:  Your Honor, I'm not sure I necessarily

agree with that characterization.  In our view, a status quo would be having a legal untainted contested director election. We understand --

THE COURT:  But that's not -- where we are right now, there's only one election scheduled.  It's the one for next week, so what you are asking in terms of the injunctive relief you are seeking is for me to alter the status quo that we have right now.

MR. VOEGELE:  We would ask Your Honor to -- if a tainted director election is the status quo, then absolutely, yes, Your Honor, we would ask you to alter that tainted director election and allow stockholders to have an untainted director election.

THE COURT:  I guess whether I opine on whether it is tainted or legitimate or otherwise, I am being asked to alter the meeting -- the election scheduled for next week.

MR. VOEGELE:  I suppose that's right, Your Honor. That meeting date is somewhat in the discretion of the Board. The Board obviously used its authority to reject our nominations and plow forward.  We contest that.  I don't think illegitimate action on the part of the Board can be shielded by the notion that it's status quo.  Its actions don't comply with federal law.  And to the extent that a director election needs to comply with federal law, that, in our view, Your Honor, should be the status quo.

THE COURT:  How do you respond to their argument -- this goes more towards bounds of harms than what I was just asking about.  Their argument that if this meeting -- this election for next week is postponed, that they will not get it in within the calendar year as required by SEC guidelines.

MR. VOEGELE:  Your Honor, I think that argument is a pure scare tactic on the defendants' part.  The Exchange rules allow for postponements.  Courts have enjoined annual meetings without delisting resulting.  I just don't see that --

THE COURT:  Have delayed them past the one-year -- have delayed them in such a way that they would not meet that particular provision?

MR. VOEGELE:  That's right, Your Honor.

THE COURT:  Do you have cites for that?

MR. VOEGELE:  I could provide authority for you, Your Honor.

THE COURT:  All right.  Go ahead, continue.  I may have interrupted your argument.

MR. VOEGELE:  Well, defendants argue here that there is nothing to see because there's no contested election.  There is no contested election precisely because the defendants blocked the contest.  They refuse to include Brancous nominees on the proxy and proxy card and made solicitation impossible.  So they should not be allowed now to

bootstrap their own improper rejection into a defense.

Federal law required an accurate disclosure of all valid nominations.  It required an inclusion of all nominees on the universal proxy card, and it required truthful, nonmisleading proxy materials that shareholders could rely on.

THE COURT:  But all of that turns on the timeliness argument, right?  If I wind up agreeing with defendants that your submission was untimely, then all of those things you just mentioned are not violations, correct?

MR. VOEGELE:  That's right, Your Honor.  The timeliness of the nomination notice is the central issue here. I think even in reading defendants' opposition, they've somewhat abandoned all of the other various technicalities that they pointed to in rejecting the nomination notice.  The timeliness issue is certainly the central one.

THE COURT:  Okay.

MR. VOEGELE:  If Your Honor has any other questions, I would be happy to answer them.

THE COURT:  No, I don't think I do right now.  Let me hear from defendants.

MR. KURTZ:  Good morning, Your Honor.  Glenn Kurtz from White & Case on behalf of Braemar Hotels.  Your Honor, before we started, I handed to your deputy some slides that I intend to refer to.  I don't know if that's been provided to you yet or not.

THE COURT:  Yes.  I can both see them on my screen, and then I also have a hard copy here.

MR. KURTZ:  Okay.  Thank you, Your Honor.  I want to start by noting that it is extraordinary, if not unprecedented, to seek to enjoin an annual shareholder meeting ten days, and at this point, Your Honor, four days before it is scheduled to occur or to invalidate the votes of other shareholders in their absence.  Plaintiffs have not cited, and we are not aware of any court that has ever done either of those things.

And, Your Honor, I'll respond that, of course, it is a mandatory injunction.  They're asking Your Honor to require the company to name their nominees which, by the way, is not even something that can be -- that is required, which I will cover, and to disseminate on those nominees in a new proxy statement.  That is by definition mandatory and, as Your Honor knows, it is much more difficult to obtain mandatory relief than it is to obtain prohibitory relief.  The status quo today is that the meeting is going to take place in four days absent an injunction.

I will not burden Your Honor with everything we covered in our brief, but I do want to focus on three items.  One is that it is a delay that really precludes this type of emergency relief.

The second is that the plaintiff can establish a

likelihood of success on the merits or even a colorable claim.

And the third is that the balancing of equities weighs heavily in favor of denying a TRO.

The reason, Your Honor, I want to start with the delay is because that is a basis that courts frequently rely on in denying emergency relief.  Those that seek equity must do so with haste and dispatch.  Plaintiffs here have done nothing like that.  You cannot create your own emergency and then rely on that.  The plaintiffs have had six months to challenge the nomination process but waited until ten days before the hearing to do so.  Only after the proxy materials had been prepared, filed and delivered, and only after thousands of shareholders have cast their votes.  As of this morning, Your Honor, more than 56 million shares have been voted, both on the election and on the other items that are scheduled for the shareholder vote.

To go through the dates here, there was some question as whether it's been six months.  To go through the dates here, the company provided notice on May 22nd that the deadline for nominating directors was June 2nd, 2025.  Plaintiff requested the nomination questionnaire so that they could nominate directors on May 25th and after confirming that the plaintiff was a record stockholder, the company provided on May 29th the required questionnaire in advance of the June 2nd deadline.

Plaintiff did not submit its nomination on June 2nd when

it was due or until four and a half months later.

On July 2nd, a month later, the company notified stockholders that the meeting had been moved or would be moved to December 15th, and that was, Your Honor, five months ago.

THE COURT:  Was there any indication when it was moved that you were not going to reopen the nomination window?

MR. KURTZ:  Yeah, Your Honor, I think it was disclosed that under the Bylaws in its Article I § 11(a)(2), there is no obligation to reopen the nominating period.

THE COURT:  That was part of what was sent to people --

MR. KURTZ:  That was part of what was sent --

THE COURT: -- July 2nd.

MR. KURTZ:  Correct, Your Honor.  Four and a half months since the original deadline go by and then the plaintiff shows up on October 17th purporting to nominate directors within 13 days on October 3rd -- October 3rd.  The company communicated that it was rejecting -- the Board was exercising its business judgment to reject the untimely notice which also contained other deficiencies.  We covered some of those in our brief, Your Honor.

Plaintiff then delayed again, this time more than a month before it actually filed a lawsuit.  Had plaintiff challenged at any point in time in the six months since they missed the deadline, then we wouldn't be here on an emergency basis.

THE COURT:  Now, how do you respond generally to the arguments that plaintiff was making -- maybe you were going to get to this -- regarding (a) the fact that they assumed that it was going to be reopened when you moved the date, and then (b) that the reason they didn't challenge it right away was because they were trying to engage the Board and counsel in discussions?

MR. KURTZ:  So, Your Honor, in the first place, there's no basis for them to have believed that there was going to be a reopening of the nomination period.  That's a pure fabrication and, frankly, Your Honor, so is the argument and the representations repeatedly made to Your Honor that they reached out to negotiate on the nominations.  That never happened, Your Honor.  Nor did any contacts happen in a timely way.

Rather, in late November, I think right around Thanksgiving, so basically almost a month from the confirmation of a rejection, plaintiff reached out to me and reached out to engage on their nonbinding indication of interest for buying the company.  At no point in time did anyone raise with me anything relating to the nomination of directors, neither a request to accept belated nominations or any other related matter until, I believe, December 2nd when plaintiff's counsel reached out to me to say if we did not engage on the indication of interest, they would then sue on

the nomination issue which they then did the very next day. There hasn't been a single conversation.

Your Honor, that is Exhibit 4 in our papers and that is docketed at 9-6.  And there's no contrary evidence because there never was engagement on the director issue.

And what that demonstrates is that this was never about nominating directors.  Had plaintiff had an interest in nominating directors, they would have done so by June 2nd and they would have engaged by filing a lawsuit or otherwise sometime in the intervening six months.

Your Honor pointed out that there was another dissident shareholder on the same exact clock.  They did get their materials in by June 2nd.  They were seated on the Board, and they are on this year's ballot.  So it was very easy to do this if one had an interest in doing it.

Before leaving the delay, Your Honor, I just want to point out that courts routinely reject belated requests for injunctive relief.  We have on slide 4 some cases between 11 and 22 days, were it 10, if not four.  If we go to the next slide, I want to call out the *Rabbani* case, *Rabbani v. Enzo Biochem*.  We didn't include this one in the brief, we found it later; it's instructive.  It's a parallel situation where the plaintiff -- the Court denied an injunction sought 18 days, more than we have here, before meeting because the plaintiff in that case, as here, failed to conduct a timely proxy battle

that would have given him the opportunity to contest the company's candidates without jeopardizing the annual meeting. The Court denied the injunction because the plaintiff in that case, as here, failed to act with sufficient diligence in which the Court found to be fatal.

We would submit, Your Honor, the delay is dispositive here, and I will note that the entire posture of this case is that there is supposed to be some contested proxy contest and we're preventing it.  There is no proxy contest.  I'll come back to this on the likelihood of success on the merits.

But even as of today, plaintiff has never filed the proxy statement and has never solicited any votes, four days before the meeting and after 50-plus million votes have already been cast, collected, and docketed.

The second issue that I wanted to raise, even though I don't think the Court needs to get to it based on delay, is that the plaintiff is simply not entitled to injunctive relief because it has not established a likelihood of success on the merits of its claims or frankly, as I mentioned, even that it has a colorable claim.

And I am starting with the standards even though I don't think the standards would normally be disputed, but in this case plaintiff actually cites the wrong governing standards.

THE COURT:  Let me just ask you one question on the standards before you move on to the argument you're about to

make.  In your view, is the delay contention outside of the *Winter* factors, or does it fall under imminent and irreparable harm?

MR. KURTZ:  It actually is both outside the standards because courts just don't look at the elements if you wait too long.  If you sit on your rights, then you're not entitled to injunctive emergency relief, not entitled to burden the court with that, you're not entitled to burden the parties with that.  Having said that, delay also plays both into irreparable harm because the courts find that the fact that you delayed demonstrates there's no irreparable harm and it also plays into the balance and the equities.  And the courts consistently cite delay in finding that a plaintiff can establish the balancing of equities where it waited too long to sue.  It sort of fits a lot of different components of injunctive relief.

THE COURT:  Okay, thank you.

MR. KURTZ:  The plaintiff oddly cites the pre-*Winter* cases.  The plaintiff does that because there were certain pre-*Winter* cases that looked mostly at irreparable harm and balancing the equities and deemphasized the likelihood of success on the merits.  For the reasons we just covered, even pre-*Winter*, the plaintiff wouldn't be able to satisfy the standards, but *Winter* made very clear that plaintiff has to establish here, as in really all other circuits, a likelihood

of success on the merits.  And, in fact, if plaintiff fails to show a likelihood of success on the merits, the court doesn't even look to the other factors.  So it is the key factor here.

That is the case here.  Plaintiff has brought two claims -- or two sets of claims, securities law claims and fiduciary duty claims, and neither one of those categories has any merit whatsoever.

I will start with the securities loss claims; that's what gets us into court here today jurisdictionally.  Plaintiff alleges that the defendants violated the SEC Rules 14a-9, 14a-3 and 14a-9 [sic].

I'll start with 14a-19.  14a-19 applies only to a contested election.  A contested election is defined as an election where, quote: a person or group of persons is soliciting proxies in support of director nominees other than the registrant's nominees.  That's the company's nominees. Here no one is soliciting proxies for any nominees outside of the registrant's nominees.

Plaintiff has not filed a proxy statement.  It is not solicited.  The holders of 67 percent of the voting power of shares entitled to vote on the election of directors as required under 14a-19 and, in fact, plaintiffs cannot do so now.  Because Rule 14a-19(a) provides that, quote: no person may solicit proxies in support of director nominees other than the registrant's nominees if they do not comply with the

requirement of filing a proxy and soliciting holders of more than 67 percent of the voting power, which the plaintiffs haven't done.  Accordingly, Section 14a-19 is not even applicable here.

And, Your Honor, the allegation here as to what is misleading just highlights the flaw in the theory because plaintiff argues in its motion at page 8 that the proxy materials in the company's solicitation materials "concealed the existence of a contested election."  But there is no contested election that could be concealed -- again --

THE COURT:  I took his argument to be had you accepted his -- what you contend was an untimely filing, then there would have been a contested election.  Is that...

MR. KURTZ:  No.  Because, Your Honor, the only way to contest an election -- maybe go back to the slide before this -- is you actually have to file your own proxy, and you actually then have to mail your own proxy separate from the company's proxy to solicit as a dissident stockholder, and you have to do that with respect to at least 67 percent of the voting block.  They didn't do that.

THE COURT:  So your take is he would have had to do both things, or he just would have had to do this that was required by 14a-19?

MR. KURTZ:  To have a contested election, they would have had to file -- this is what people do that are actually

interested in proxy fights as opposed to parties that are just talking about proxy fights. You put together your own proxy statement. One thing you could do is run into court six months ago and you ask to get the relief that you need to get on our proxy card. However, what you otherwise do is you file a proxy statement and you solicit at least 67 percent of the shares.

Then the rest of 14a, which I'll go through, is requirements on the part of the company to refer to and distinguish that proxy statement, but they don't go on our card. They don't go on our card. And if we go to the next page --

THE COURT: So in your view, when they missed the June deadline, they could have done this.

MR. KURTZ: They could have done this. This is what is routinely done. Proxy fights, they fight about whether they should be on and then they go file a proxy, and then they argue that you have to refer to their proxy.

There's actually SEC guidance if we go to slide 10, guidance on this exact scenario. So where you have a registrant receive director nominations from a dissident shareholder purporting to nominate candidates at an upcoming meeting and the registrant, here the company, determines that the nominations are invalid due to the failure of the dissident stockholder to comply with the advance notice bylaw

requirements -- again, exactly here -- then the question was: "Must the registrant include the names of the dissident shareholder's nominees on its proxy card pursuant to 14a-19 under these circumstances?"

The answer was: "No.  Only duly nominated candidates are required to be included on a universal proxy card," and goes on to say "If the registrant determines, in accordance with state or foreign law, that the dissident shareholder's nominations do not comply with its advance notice bylaw requirements, then it can omit the dissident shareholder's nominees from its proxy cards."  Meaning there would have never even been an ability to get a mandatory injunction to require the inclusion, but that doesn't stop the proxy contest.  You mount the proxy contest by putting out your own proxy statement.

We'll see that now as we go through the second claim which is a 14a-3 claim where the plaintiff says the company's proxy statement was misleading, in violation of 14a-3, because it failed to include a statement directing stockholders to Brancous' proxy statement.  That's page 8 of their motion. There is no Brancous proxy statement.  So Rule 14a-3 does not apply.  And defendants can't violate a rule by failing to direct stockholders to a nonexistent document.  In fact, doing so would have been confusing and misleading.

The third of the securities law claims suffers from

exactly the same defect.  Plaintiff's third claim is that defendants violated 14a-9 by not clearly distinguishing the company solicitation materials from the plaintiff's solicitation materials.  But, again, the plaintiffs do not have solicitation materials to be distinguished.  So 14a-9 does not apply.  None of the provisions apply and all their claims demonstrate is that they never had an intention to mount the proxy fight.  They haven't mounted a contested proxy fight.

Their only interest, their engagement -- they came up here and said, "We did engage."  What they engaged on is an effort to buy the company, not to get nominees.  That's what we're here for.  We're here for leverage in support of their indication of interest to buy the company.

Your Honor, the second category of claims is a breach of fiduciary duty claim.  Plaintiff's claim is based on the incorrect premise that it timely complied with the bylaws.  They've never tried to explain in their brief or here at the podium today how a four-and-a-half-month miss on the deadline could be timely.  It plainly wasn't.  Under the undisputed fact because nobody disputes, it was set for June 2nd and the purported nominations came in on October 17.  That claim fails.

THE COURT:  What I heard today was they believed it was timely because they believed the window reopened when the

date moved.

MR. KURTZ:  But it -- but under the bylaws, it didn't reopen.  There was no disclosure that it was reopened. Nobody invited further nominations, and I don't think coming in with a representation as to their belief which is unsupported by any evidence -- there's no declaration supporting that -- that that somehow is sufficient to override the unambiguous bylaws and the securities laws.

THE COURT:  Is there any substantive response to sort of the assertion that this was intentional manipulation of the bylaws to effectuate a situation where there were no dissident --

MR. KURTZ:  Sure, Your Honor.  Initially, the applicable time frame under not only the bylaws but Section 14a under the securities laws for nominating directors under these circumstances is ten days.  This wasn't made up.  Ten days is customary.

Secondly, they could have and chose not to elect.  They got the questionnaire, they just didn't submit it.  Because they had no interest in nominations.

Thirdly, as Your Honor pointed out, we had a dissident shareholder that got it in under those circumstances and is standing for election and is receiving votes right now and will be impaneled on the Board.

Fourth, Your Honor, Section -- I mentioned before 11a-2

is completely clear that a postponement or adjournment of an annual meeting of the public does not reset the period of time for nominating directors.

Three -- I'm sorry, five is the plaintiff knew as of July 2nd that there would be a Board meeting, an annual shareholder meeting on December 15th, and waited into December to come to Your Honor.  So none of this supports a claim.

And it's also pretty traditional approaches here.  There was simply an adjournment and they've had -- if you want to go back to the adjourned date, they've had -- since the notice of an adjourned date, they've had five months to come here and they chose not to do so.

On the fiduciary duty claim, Your Honor, in addition to being premised on an indisputably false assertion that they complied with the deadline for nominating directors, they also have to overcome the business judgment rule.  And in Maryland, an act of a director is presumed to be in accordance with subsection (c) which means that they acted in good faith, the director acted presumptively in a manner that the director reasonably believed to be in the best interest of the corporation, and with the care that an ordinary prudent person in a like position would use under similar circumstances.

The Court presumes "that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in honest belief that the action taken was in

the best interests of the company."  The burden is on the party trying to rebut the presumption to demonstrate bad faith, self-dealing, unconscionable conduct or fraud.

And the Court, in looking at this, asks whether any rational business person could have reached the result proceeding independently and in good faith and in the best interest of the corporation in mind.  The answer to that here is plainly yes, it's an unambiguous bylaw provision.  It supports an orderly and consistently applied election rule. It works.  As demonstrated here, this would be unusual perhaps to have an actual instance where we had two dissident stockholders; one complied with the rule and is on the Board and on the ballot, so all of it works.

Business judgment is a powerful protection for directors, and, in fact, most practitioners would tell you that it's all but case dispositive.  People running around in these circles would typically tell you: entire fairness, the heightened standard is case dispositive for plaintiffs, and business judgment is case dispositive for defendants.

Your Honor, the plaintiff hasn't spoken to -- I was going to go through certain case law; they haven't spoken to it.  I don't think they should be able to if they do.  Maybe I can come back up, but I don't want to burden Your Honor with argument that's in the brief and that hasn't been raised at the podium today.  Unless Your Honor feels like hearing about

it.

THE COURT:  Okay.  No, I think that's fine.

MR. KURTZ:  My last point that I want to make, Your Honor, is the balancing of the hardships.  We talked a little bit earlier about how delay is relevant to this.  There is no harm for the plaintiffs at all.  They're not harmed by having to comply with the requirements of the bylaws.  Bylaws have the force of contract, that's the contract that applies between a corporation and the stockholders.  Any harm that they claim is based on their own delay, self-inflicted and based on their own delay in not challenging this, either when they missed the deadline and therefore knew what the rule was, or when the meeting was adjourned.  Frankly, want to chop off some more time, they like to look at October 30th; they still waited more than a month which is an enormous amount of time, frankly.

The courts, and we have some up on slide 16, pointed out they can't satisfy this when -- this element when they delayed and that it's a self-inflicted wound.

The defendants, in contrast, will be substantially harmed.  Your Honor asked the plaintiff about this, it's Rule 302.00 which requires an annual meeting.  I'm not aware of a court under any circumstances enjoining a meeting four days or ten days before it was to go off.  In fact, cases have denied that consistently.  Plaintiff suggested that this is a scare

tactic, that New York Stock Exchange doesn't delist for these circumstances.  That may be partially right -- that -- whether it's a scare tactic or not is sort of irrelevant; it's a rule and it won't be complied with.  There is an ability to delist.

I am certainly not representing to this Court that I have an expectation that the company would be delisted.  If that happened, that would be transformationally prejudicial to stockholders that went from a liquid stock to an inability. So maybe it's scary more than a scare tactic.  I don't mean to represent -- I don't represent that the company has any expectation that this would be the result of not holding the meeting.  But it is, in fact, an available remedy.

The second part of the harm, Your Honor, is by waiting this long, the company has already incurred a number of expenses, almost a quarter million dollars in preparing the proxy and in printing it and delivering it, and arranging for the meeting, obtaining a no-action letter and all of which will be wasted if they are also allowed somehow to now mount a proxy contest -- and I think they have no interest in doing so -- to reset everything.  Proxy contest, frankly, can cost millions of dollars so it's pretty expensive.

As I mentioned, but I think it's worth highlighting, we've got -- again, double-check my number -- we have 56.6 million votes that have already been cast.  They're not even in court to speak here today, but on behalf of them, I say

their vote should not be invalidated under these circumstances.

Unless Your Honor has any questions, I will sit down.

THE COURT:  No, I think I've interrupted to ask them all so we're all set.  Thank you very much.

MR. KURTZ:  Thank you very much, Your Honor.

THE COURT:  All right.  I'll give you the last word since it's your motion.

MR. VOEGELE:  Your Honor, I'll just raise a few points, specifically starting with the issue of delay. Exhibit 4 which Mr. Kurtz referenced, it shows that plaintiff engaged with Mr. Kurtz from November 17th until December 2nd, and then we filed this action on December 3rd.

I would also direct Your Honor if this is such a straightforward issue of timeliness under the company's bylaws, why did it take the Board 13 days to reject the nomination notice?  If, as Mr. Kurtz suggested, the Board needed to do due diligence to ensure that Brancous was a record stockholder, why in its rejection letter did it still object to saying that Brancous was not a record shareholder?

It smacks of disingenuity, Your Honor, to put this many technicalities in a rejection notice and then rely on the bylaws' ten-day nomination notice for an annual meeting that -- who knows -- this Board probably never even intended to hold that meeting in that time frame.  Even standing here

today, there has never been a single reason offered for why the Board has postponed the meeting in the way that it did and why it did not reset the nomination notice to October 17 as it had previously disclosed in its own SEC filings.

THE COURT:  Do you agree that the July 2nd notice that was sent out about the change in meeting date indicated that it was not reopening the window?

MR. VOEGELE:  Standing here today, Your Honor, I don't know that.  I'd have to look back at the SEC disclosures from the company.

THE COURT:  Do I have that in the exhibits somewhere?

MR. KURTZ:  Your Honor, I'll find a reference for you.

THE COURT:  Okay, go ahead.

MR. VOEGELE:  The last thing that I'd like to direct Your Honor to was slide 5 which was the defendants' *Rabbani* authority.  I would argue *Rabbani* is inapposite.  It's prior to Rule 14a-19's universal proxy access rules.  The notion now is that dissident shareholders get access to a company's proxy card.  That was not the case in 2010.  So the considerations here are just different.

THE COURT:  How do you respond to defendants' arguments regarding the applicability of 14a-19 and -9 and -3?

MR. VOEGELE:  Your Honor, I would say again, I don't

think the defendants get to use the notion that they blocked the shareholder contest -- shareholder right to nominate for a contested election and then say that that's a defense to actually, you know, abiding by the Exchange Act disclosures that are required.

THE COURT:  Okay.  All right, thank you.

MR. KURTZ:  I have conferred with my transaction counsel.  The materials did not speak to the reopening the nomination period, nor did it speak to not reopening the nomination period.

THE COURT:  Okay.  It just didn't address one way or the other --

MR. KURTZ:  It just didn't -- other than what the bylaws say which I cited.  Your Honor, can I take 45 seconds to offer a couple of quick responses?

THE COURT:  Sure.

MR. KURTZ:  So, again, counsel says they engaged -- Your Honor has Exhibit 4 -- they engaged not on the subject of this lawsuit; they engaged on trying to buy the company.  So that's not an excuse.

Two, counsel claimed that the 13 days it took to respond somehow is bad faith.  This was a Board decision so the Board had to meet so it's not an instant -- they're operating through counsel, but defendants are operating through a Board.

And lastly, Your Honor, I would like to point out *BlackRock Credit Alliance* specifically spoke to you can't simply look at a timeline and speculate about bad motives. You need evidence to demonstrate that there was some bad motive in connection with the rejection of a nomination notice. And, again, I don't think plaintiff addressed this to Your Honor, but they haven't mounted a proxy fight, and they don't need us to do so. Thank you.

THE COURT: All right, thank you. If there's nothing further, I'm actually going to step back into chambers and look at a couple of things. Then I'm going to come back on the bench, and I believe I'll be able to rule here today.

MR. KURTZ: Thank you, Your Honor.

THE CLERK: All rise. This Honorable Court now stands in recess.

(Recess taken at 10:39 a.m. till 10:47 a.m.)

THE COURT: All right. You may be seated. I have taken the opportunity to review some things in addition to the argument that I heard today, and based on my assessment, I'm going to deny the motion for a temporary restraining order or preliminary injunctive relief.

As the parties have noted today and the law is clear, TROs and preliminary injunctions are an extraordinary and drastic remedy prior to trial. In order to meet the burden of that type of injunctive relief, a plaintiff, the movant, has

to demonstrate four factors and has to demonstrate all of them in order to prevail.

First, that they are likely to succeed on the merits. Second, that they are likely to suffer irreparable harm in the absence of injunctive relief.  Third, that the balance of equities favors injunctive relief.  And, fourth, that the injunctive relief is in the public interest.

I do find in this particular case also that the type of injunction that is being requested is a mandatory injunction. As the Fourth Circuit has made clear, a prohibitory injunction occurs when the movant is trying to preserve the status quo which is the last uncontested status between the parties which preceded the controversy.  And mandatory injunctions are those that seek to alter rather than preserve the status quo.

In this situation, we have an election that is scheduled to take place next week in just a few days, and the movant is seeking to alter that to stop that election from taking place. Mandatory injunctions are disfavored, and they are available only when the applicant's right to relief is indisputably clear.

So applying those standards to this case and looking first to something that is something of an independent factor that is considered by courts before even getting to those standards which is the issue of delay.  Despite plaintiff's efforts to justify, I guess, the delay in this case, I think

this is clearly a case in which there was a lack of diligence or an intentional strategy at play here that led this case to be filed way significantly after when it should have been.

As of July 2nd, plaintiffs were aware that the election was being moved back and that the bylaws would provide that nominations would not be reopened.  At the very latest, plaintiffs found out in October that their nominations had been rejected, and in this case, the case was not filed until December 3rd which is just 12 days before the scheduled election.

I understand the explanation that plaintiff was trying to work things out.  I don't really think -- I know there's a factual dispute about whether there were efforts to work it out or not.  I don't think it's material which way the efforts went or whether they happened or not because I don't think they justify the delay ultimately.  People are perfectly capable of both filing a suit and then trying to negotiate after the suit is filed, and I think it's clear that's what should have happened here, at the very least in October, in order to not create an exigency which didn't otherwise exist.

So I believe that delay is grounds for denying the injunctive relief that's being requested independently, but I also find, as I'll mention in a moment, that it factors into some of the *Winter* factors that I have to consider when

determining whether injunctive relief is appropriate.

I also, looking at the *Winter* factors, do not find that the movant has shown a likelihood of success on the merits here.  I agree with defendants' analysis with respect to the applicability of the various SEC rules that we have talked about today, specifically -- make sure I'm getting the numbers right -- 14a-19, -9 and -3.  I believe that defendants' analysis of those rules is correct and that they do not apply to the situation here.

I also think with respect to the breach of fiduciary duty claim that the business judgment rule is dispositive.  Even if I were to assume, as plaintiff certainly alleged, that there was some shenanigans going on in terms of the movement of the dates for the election to try to favor the Board's preferred candidates, I don't think that it amounts to the type of fraud or bad faith that is required to overcome the business judgment rule.  And for those reasons, I do not think plaintiffs can establish a likelihood of success on the merits here.

I'm not going to address irreparable harm, although to the extent that it's imminent irreparable harm, I do think the delay plays into evaluating imminence of the harm because I think that the imminence was entirely created by plaintiff's delay.  But I think that it is clear that plaintiff cannot meet its burden with respect to the balance of equities in the

public interest here.

Again, I think that this is a mandatory injunction that is being sought and that the standard is higher in those circumstances, and I think that looking at the balance of equities here, we are in a situation where 56 million shares have already been voted. Those shareholders have already participated in the election that's scheduled for next week. And we are in a situation, although everyone seems to agree that it would be unlikely that the company would be delisted, if this vote for next week were to be pushed off, it would technically put the company into a violation of a rule for the New York Stock Exchange. They would, at least, be potentially subject to delisting. Again, that might not be a likely scenario, but it would put the company in a position to be in violation of the rule.

The delay as well contributes to the balance of the equities analysis, and I find that based on the delay, equitable relief is not warranted here.

So for all of those reasons, I conclude that the movant has not met its burden on each of the four *Winter* factors and is not entitled to injunctive relief.

I know given the nature of this case, it's a little unclear where we would go from here. I will just ask the parties to confer with one another and then advise the Court as to how they believe this case should proceed from here. Is

there anything else that we need to address in this matter this morning?

MR. VOEGELE:  No, Your Honor.

MR. MARTINEZ:  Not from our point of view.  Thank you, Your Honor.

THE COURT:  All right.  Thank you-all.

THE CLERK:  All rise.  This Honorable Court now stands adjourned.

MR. KURTZ:  Thank you, Your Honor.

THE COURT:  Thank you.

(Proceedings concluded at 10:54 a.m.)


CERTIFICATE OF OFFICIAL REPORTER

I, Patricia G. Mitchell, Registered Merit Reporter, Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.
Dated this 15th day of December 2025.


_____
Patricia G. Mitchell, RMR, CRR
Federal Official Reporter

< Dates >

**15th day of December 2025.** 36:23 .

**December** 7:5, 24:6 .

**December 11, 2025** 1:17 .

**December 15th,** 13:4, 24:6 .

**December 15th, 2025,** 7:10 .

**December 2nd** 14:23 .

**December 2nd,** 28:12 .

**December 3rd** 28:13, 33:9 .

**July** 13:13 .

**July 2nd** 24:5, 29:5 .

**July 2nd,** 13:2, 33:4 .

**June** 5:11, 5:15, 15:13, 20:14 .

**June 2nd** 12:24, 12:25, 15:8, 22:21 .

**June 2nd, 2025.** 12:20 .

**May 22nd** 12:19 .

**May 25th** 12:22 .

**May 29th** 12:23 .

**November** 4:21 .

**November 17th** 28:12 .

**November,** 14:16 .

**October** 3:25, 5:3, 5:4, 5:11, 13:17, 33:7 .

**October 17** 29:3 .

**October 17.** 22:22 .

**October 17th** 13:16 .

**October 30th** 26:14 .

**October 30th** 5:20 .

**October 3rd** 13:17 .

**October,** 33:19 .

**-3** 29:24 .

.

.

< 0 > .

**00** 1:18 .

.

.

< 1 > .

**10** 1:18, 15:19, 20:19, 31:16, 36:11 .

**10-day** 6:19 .

**100** 1:41 .

**10007** 1:35 .

**10020-1095** 1:48 .

**11** 15:18 .

**11(a)(2** 13:8 .

**11a-2** 23:25 .

**12** 33:9 .

**1221** 1:47 .

**13** 13:17, 28:16, 30:21 .

**14a** 20:8, 23:15 .

**14a-19** 18:12, 18:22, 19:3, 19:23, 21:3, 29:19, 29:24, 34:7 .

**14a-19(a** 18:23 .

**14a-3** 18:11, 21:17, 21:18, 21:21 .

**14a-9** 18:10, 18:11, 22:2, 22:5 .

**16** 26:17 .

**18** 15:23 .

**1:** 1:9 .

.

.

< 2 > .

**2000** 1:41 .

**2010** 29:21 .

**21202** 1:30, 1:42 .

**22** 15:19 .

**2200** 1:29 .

**25-3971-SAG** 2:5 .

**28** 36:18 .

**2nd** 13:13, 15:13 .

.

.

< 3 > .

**3** 34:7 .

**302.00** 26:22 .

**305** 1:34 .

**30th** 3:25 .

**39** 31:16 .

**3rd** 13:17 .

.

.

< 4 > .

**4** 15:3, 15:18, 28:11, 30:18 .

**45** 30:14 .

**47** 31:16 .

.

.

< 5 > .

**5** 29:17 .

**5-cv-03971-sag** 1:9 .

**50-plus** 16:13 .

**54** 36:11 .

**56** 2:2, 12:14, 35:5 .

**56.6** 27:23 .

.

.

< 6 > .

**60-day** 5:18, 6:3 .

**67** 18:20, 19:2, 19:19, 20:6 .

.

.

< 7 > .

**753** 36:18 .

**7th** 1:34 .

.

.

< 8 > .

**8** 19:7, 21:20 .

.

.

< 9 > .

**9** 2:2, 29:24, 34:7 .

**9-6** 15:4 .

**[sic]** 18:11 .

.

.

< A > .

**A.** 1:22 .

**a.m.** 1:18, 2:2, 31:16, 36:11 .

**abandoned** 10:13 .

**abiding** 30:4 .

**ability** 21:12, 27:4 .

**able** 17:23, 25:22, 31:12 .

**above-entitled** 36:20 .

**absence** 11:8, 32:5 .

**absent** 11:19 .

**absolutely** 8:10 .

**accept** 4:18, 14:22 .

**accepted** 19:12 .

**access** 29:19, 29:20 .

**accordance** 21:7, 24:17 .

**Accordingly** 19:3 .

**accurate** 10:2 .

**Act** 16:4, 24:17, 30:4 .

**acted** 24:18, 24:19, 24:24 .

**action** 3:23, 4:7, 4:20, 8:21, 24:25, 28:13 .

**actionable** 3:24 .

**actions** 8:22 .

**actual** 25:11 .

**actually** 13:23, 16:23, 17:4, 19:16, 19:17, 19:25, 20:19, 30:4, 31:10 .

**addition** 24:13, 31:18 .

**additional** 4:2, 6:5 .

**address** 30:11, 34:20, 36:1 .

**addressed** 31:6 .

**adjourned** 24:10, 24:11, 26:13, 36:8 .

**adjournment** 24:1, 24:9 .

**admission** 2:12 .

**admits** 3:24 .

**advance** 12:24, 20:25, 21:9 .

**advise** 35:24 .

**ago** 13:4, 20:4 .

**agree** 8:1, 29:5, 34:4, 35:8 .

**agreeing** 10:7 .

**ahead** 9:18, 29:15 .

**al** 1:11 .

**allegation** 19:5 .

**alleged** 34:12 .

**alleges** 18:10 .

**Alliance** 31:2 .

**allow** 2:18, 8:12, 9:8 .

**allowed** 9:25, 27:18 .

**almost** 14:17, 27:15 .

**already** 16:13, 27:14, 27:24, 35:6 .

**alter** 8:7, 8:11, 8:15, 32:14, 32:17 .

**Although** 6:22, 34:20, 35:8 .

**Americas** 1:47 .

**amount** 26:15 .

**amounts** 34:15 .

**analysis** 34:4, 34:8, 35:17 .

**annual** 5:16, 5:18, 7:5, 7:9, 9:8, 11:5, 16:2, 24:2, 24:5, 26:22, 28:23 .

**answer** 3:19, 10:18, 21:5, 25:7 .

**apparent** 4:6 .

**appease** 4:1 .

**applicability** 29:24, 34:5 .

**applicable** 19:4, 23:14 .

**applicant** 32:19 .

**applied** 25:9 .

**applies** 18:12, 26:8 .

**apply** 21:22, 22:6, 34:8 .

**applying** 32:21 .

**approaches** 24:8 .

**appropriate** 34:1 .

**argue** 9:20, 20:18, 29:18 .

**argues** 19:7 .

**arguing** 3:2, 3:22 .

**argument** 3:8, 3:21, 4:2, 9:1, 9:3,

9:6, 9:19, 10:7, 14:11, 16:25, 19:11, 25:24, 31:19 .
**arguments** 14:2, 29:24 .
**around** 14:16, 25:16 .
**arranging** 27:16 .
**Article** 13:8 .
**asks** 25:4 .
**assertion** 23:10, 24:14 .
**assessment** 31:19 .
**assume** 34:12 .
**assumed** 14:3 .
**assumption** 5:17 .
**attempted** 4:1, 4:19 .
**attempts** 3:11 .
**authority** 8:19, 9:16, 29:18 .
**available** 27:12, 32:18 .
**Avenue** 1:47 .
**aware** 11:9, 26:22, 33:4 .
**away** 14:5 .
.
.
**< B >** .
**back** 5:3, 16:10, 19:15, 24:10, 25:23, 29:9, 31:10, 31:11, 33:5 .
**bad** 25:2, 30:22, 31:3, 31:4, 34:16 .
**balance** 17:12, 32:5, 34:25, 35:4, 35:16 .
**balancing** 12:2, 17:14, 17:21, 26:4 .
**ballot** 15:14, 25:13 .
**Baltimore** 1:16, 1:30, 1:42 .
**based** 16:16, 22:16, 26:10, 26:11, 31:19, 35:17 .
**basically** 14:17 .
**basis** 12:5, 13:25, 14:9, 24:24 .
**battle** 15:25 .
**became** 4:6 .
**behalf** 2:11, 2:23, 3:2, 10:22, 27:25 .
**belated** 14:22, 15:17 .
**belief** 23:5, 24:25 .
**believe** 14:23, 31:12, 33:22, 34:7, 35:25 .
**believed** 14:9, 22:24, 22:25, 24:20 .
**bench** 31:12 .
**beside** 5:20 .

**best** 24:20, 25:1, 25:6 .
**beyond** 6:15 .
**Biochem** 15:21 .
**bit** 5:15, 26:5 .
**Blackrock** 31:2 .
**block** 6:21, 19:20 .
**blocked** 9:23, 30:1 .
**Board** 4:1, 4:3, 4:14, 4:17, 5:6, 5:9, 5:16, 6:4, 6:7, 6:19, 7:3, 7:5, 7:7, 8:18, 8:19, 8:21, 13:18, 14:6, 15:13, 23:24, 24:5, 25:12, 28:16, 28:17, 28:24, 29:2, 30:22, 30:25, 34:14 .
**bootstrap** 10:1 .
**bounds** 9:2 .
**Braemar** 1:10, 2:4, 2:24, 10:22 .
**Brancous** 1:5, 2:4, 2:11, 3:16, 3:22, 3:25, 4:5, 4:7, 5:17, 6:18, 6:21, 7:11, 9:24, 21:20, 21:21, 28:18, 28:20 .
**breach** 22:15, 34:10 .
**brief** 3:24, 6:18, 11:22, 13:21, 15:21, 22:18, 25:24 .
**bring** 3:23, 4:16 .
**Broadway** 1:34 .
**brought** 18:4 .
**burden** 11:21, 17:8, 25:1, 25:23, 31:24, 34:25, 35:20 .
**Business** 4:3, 13:19, 24:16, 24:23, 25:5, 25:14, 25:18, 34:11, 34:16 .
**buy** 22:12, 22:14, 30:19 .
**buying** 14:20 .
**bylaw** 20:25, 21:9, 25:8 .
**Bylaws** 3:15, 6:17, 13:8, 22:17, 23:2, 23:8, 23:11, 23:14, 26:7, 28:16, 28:23, 30:14, 33:5 .
.
.
**< C >** .
**C.** 36:18 .
**calendar** 9:5 .
**call** 15:20 .
**Camille** 1:45, 2:25 .
**candidates** 16:2, 20:22, 21:5, 34:15 .
**capable** 33:17 .

**card** 9:24, 10:4, 20:5, 20:11, 21:3, 21:6, 29:21 .
**cards.** 21:11 .
**care** 24:21 .
**Case** 1:46, 2:5, 3:1, 3:23, 4:12, 10:22, 15:20, 15:25, 16:4, 16:7, 16:23, 18:4, 25:16, 25:18, 25:19, 25:21, 29:21, 32:8, 32:21, 32:25, 33:1, 33:2, 33:8, 35:22, 35:25 .
**cases** 15:18, 17:19, 17:20, 26:24 .
**cast** 12:13, 16:14, 27:24 .
**categories** 18:6 .
**category** 22:15 .
**caused** 5:10 .
**central** 4:8, 6:13, 10:11, 10:15 .
**certain** 17:19, 25:21 .
**certainly** 4:12, 10:15, 27:5, 34:12 .
**CERTIFICATE** 36:14 .
**Certified** 36:16 .
**certify** 36:18 .
**challenge** 12:9, 14:5 .
**challenged** 13:23 .
**challenging** 26:11 .
**chambers** 31:10 .
**change** 7:23, 29:6 .
**characterization** 8:1 .
**chop** 26:13 .
**chose** 23:18, 24:12 .
**circles** 25:16 .
**Circuit** 32:10 .
**circuits** 17:25 .
**circumstances** 21:4, 23:16, 23:22, 24:22, 26:23, 27:2, 28:2, 35:4 .
**cite** 17:13 .
**cited** 11:8, 30:14 .
**cites** 9:15, 16:23, 17:18 .
**CIVIL** 1:8 .
**claim** 12:1, 16:20, 21:16, 21:17, 22:1, 22:16, 22:22, 24:7, 24:13, 26:10, 34:11 .
**claimed** 30:21 .
**claims** 16:19, 18:5, 18:6, 18:8, 21:25, 22:7, 22:15 .
**clear** 17:24, 24:1, 31:22, 32:10, 32:20, 33:18, 34:24 .

**clearly** 22:2, 33:1 .
**CLERK** 31:14, 36:7 .
**clock** 15:12 .
**collapses** 3:21 .
**collected** 16:14 .
**colloquy** 4:17 .
**colorable** 12:1, 16:20 .
**coming** 5:25, 23:4 .
**communicated** 13:18 .
**company** 6:16, 11:13, 12:19, 12:23, 13:2, 13:18, 14:20, 16:2, 18:16, 19:8, 19:18, 20:9, 20:23, 21:17, 22:3, 22:12, 22:14, 27:6, 27:10, 27:14, 28:15, 29:10, 29:20, 30:19, 35:9, 35:11, 35:14 .
**company.** 25:1 .
**completely** 24:1 .
**complied** 22:17, 24:15, 25:12, 27:4 .
**comply** 8:22, 8:24, 18:25, 20:25, 21:9, 26:7 .
**components** 17:15 .
**Computer-aided** 1:50 .
**concealed** 19:8, 19:10 .
**conclude** 35:19 .
**concluded** 36:11 .
**conditions** 3:19 .
**conduct** 7:16, 15:25, 25:3 .
**confer** 35:24 .
**Conference** 36:22 .
**conferred** 30:7 .
**confirmation** 14:18 .
**confirming** 12:22 .
**conformance** 36:21 .
**confusing** 21:24 .
**connection** 31:5 .
**consider** 33:25 .
**considerations** 29:21 .
**considered** 32:23 .
**consistently** 17:13, 25:9, 26:25 .
**contacts** 14:14 .
**contained** 13:20 .
**contend** 19:12 .
**contention** 17:1 .
**contest** 8:20, 9:23, 16:1, 16:8, 16:9, 19:15, 21:14, 27:19, 27:20, 30:2 .
**contested** 6:17, 8:2, 9:21, 9:22,

16:8, 18:13, 19:9, 19:10, 19:13, 19:24, 22:8, 30:3 .
**Continue** 6:11, 9:18 .
**contract** 26:8 .
**contrary** 15:4 .
**contrast** 26:20 .
**contributes** 35:16 .
**controversy** 32:13 .
**conversation** 15:2 .
**copy** 11:2 .
**core** 6:18 .
**corporation** 24:21, 24:24, 25:7, 26:9 .
**Correct** 6:24, 7:24, 10:9, 13:14, 34:8, 36:19 .
**cost** 27:20 .
**Counsel** 2:8, 2:25, 4:5, 4:19, 14:6, 14:24, 30:8, 30:17, 30:21, 30:24 .
**couple** 2:16, 30:15, 31:11 .
**course** 11:11 .
**Courts** 7:16, 9:8, 12:5, 15:17, 17:5, 17:10, 17:13, 26:17, 32:23 .
**cover** 11:15 .
**covered** 11:21, 13:20, 17:22 .
**create** 12:8, 33:20 .
**created** 34:23 .
**Credit** 31:2 .
**CRR** 36:29 .
**currently** 2:13 .
**customary** 23:17 .
.
.
**< D > .**
**date** 5:15, 5:16, 5:19, 7:10, 7:12, 8:18, 14:4, 23:1, 24:10, 24:11, 29:6 .
**Dated** 36:23 .
**dates** 12:17, 12:18, 34:14 .
**Day** 6:7, 7:3, 15:1 .
**days** 4:3, 4:24, 6:3, 11:6, 11:19, 12:10, 13:17, 15:19, 15:23, 16:12, 23:16, 23:17, 26:23, 26:24, 28:16, 30:21, 32:16, 33:9 .
**deadline** 6:20, 7:9, 7:11, 12:19, 12:24, 13:15, 13:25, 20:14, 22:19, 24:15, 26:12 .
**decided** 5:4, 5:16 .

**decision** 6:21, 24:23, 30:22 .
**declaration** 23:6 .
**deemphasized** 17:21 .
**defect** 22:1 .
**defendant** 2:24, 3:3 .
**Defendants** 1:13, 1:37, 3:10, 3:15, 3:21, 3:22, 4:9, 5:25, 6:14, 6:18, 9:7, 9:20, 9:23, 10:7, 10:12, 10:20, 18:10, 21:22, 22:2, 25:19, 26:20, 29:17, 29:23, 30:1, 30:24, 34:4, 34:7 .
**defense** 10:1, 30:3 .
**deficiencies** 13:20 .
**defined** 18:13 .
**definition** 11:16 .
**delayed** 7:5, 9:11, 9:12, 13:22, 17:11, 26:18 .
**delist** 27:1, 27:4 .
**delisted** 27:6, 35:9 .
**delisting** 9:9, 35:13 .
**delivered** 12:12 .
**delivering** 27:16 .
**demonstrate** 22:7, 25:2, 31:4, 32:1 .
**demonstrated** 25:10 .
**demonstrates** 15:6, 17:11 .
**denied** 15:23, 16:3, 26:24 .
**deny** 31:20 .
**denying** 12:3, 12:6, 33:22 .
**deprived** 3:16 .
**deputy** 10:23 .
**Despite** 32:24 .
**detail** 4:2 .
**determines** 20:23, 21:7 .
**determining** 34:1 .
**different** 17:15, 29:22 .
**difficult** 11:17 .
**diligence** 16:4, 28:18, 33:1 .
**direct** 21:23, 28:14, 29:16 .
**directing** 21:19 .
**director** 8:2, 8:10, 8:12, 8:13, 8:23, 15:5, 18:15, 18:24, 20:21, 24:17, 24:19 .
**directors** 3:17, 12:20, 12:22, 13:17, 14:22, 15:7, 15:8, 18:21, 23:15, 24:3, 24:15, 24:24, 25:14 .
**disclosed** 13:8, 29:4 .
**disclosure** 6:15, 10:2, 23:3 .

**disclosures** 29:9, 30:4 .
**discretion** 8:18 .
**discussions** 4:5, 14:7 .
**disfavored** 32:18 .
**disingenuity** 28:21 .
**dispatch** 12:7 .
**dispositive** 16:6, 25:16, 25:18, 25:19, 34:11 .
**dispute** 3:12, 4:6, 5:25, 6:10, 33:13 .
**disputed** 16:22 .
**disputes** 4:15, 22:21 .
**disseminate** 11:15 .
**dissident** 7:1, 7:13, 15:11, 19:18, 20:21, 20:25, 21:2, 21:8, 21:10, 23:12, 23:21, 25:11, 29:20 .
**distinguish** 20:10 .
**distinguished** 22:5 .
**distinguishing** 22:2 .
**District** 1:1, 1:2, 36:17 .
**DIVISION** 1:3 .
**docketed** 15:4, 16:14 .
**document** 21:23 .
**doing** 15:15, 21:23, 27:19 .
**dollars** 27:15, 27:21 .
**done** 11:9, 12:7, 15:8, 19:3, 20:14, 20:15, 20:16 .
**double-check** 27:23 .
**down** 28:3 .
**drastic** 31:24 .
**Drive** 1:41 .
**due** 13:1, 20:24, 28:18 .
**duly** 21:5 .
**duty** 18:6, 22:16, 24:13, 34:10 .
.
.
**< E > .**
**earlier** 26:5 .
**easy** 15:14 .
**effectuate** 23:11 .
**effort** 22:12 .
**efforts** 32:25, 33:13, 33:14 .
**either** 6:3, 11:9, 26:11 .
**elect** 23:18 .
**election.** 19:9 .
**element** 26:18 .
**elements** 17:5 .
**emergency** 11:24, 12:6, 12:8,

13:25, 17:7 .
**engage** 4:5, 4:17, 4:19, 5:25, 14:6, 14:19, 14:25 .
**engage.** 22:11 .
**engaged** 4:19, 15:9, 22:11, 28:12, 30:17, 30:18, 30:19 .
**engagement** 15:5, 22:10 .
**enjoin** 11:5 .
**enjoined** 9:8 .
**enjoining** 26:23 .
**enormous** 26:15 .
**ensure** 28:18 .
**entire** 16:7, 25:17 .
**entirely** 34:23 .
**entitled** 16:17, 17:7, 17:8, 18:21, 35:21 .
**Enzo** 15:20 .
**equitable** 35:18 .
**equities** 12:2, 17:12, 17:14, 17:21, 32:6, 34:25, 35:5, 35:17 .
**equity** 12:6 .
**especially** 5:4 .
**Esquire** 1:27, 1:32, 1:39, 1:44, 1:45 .
**establish** 11:25, 17:14, 17:25, 34:18 .
**established** 16:18 .
**et** 1:11 .
**evaluating** 34:22 .
**event** 3:24 .
**eventually** 5:5 .
**everyone** 2:3, 35:8 .
**everything** 11:21, 27:20 .
**evidence** 15:4, 23:6, 31:4 .
**evident** 5:3 .
**exact** 15:12, 20:20 .
**exactly** 7:15, 21:1, 22:1 .
**Exchange** 9:7, 27:1, 30:4, 35:12 .
**exclusion** 3:25, 4:2 .
**excuse** 4:11, 30:20 .
**exercising** 13:19 .
**Exhibit** 15:3, 28:11, 30:18 .
**exhibits** 29:11 .
**exigency** 5:2, 33:20 .
**exist** 33:21 .
**existence** 19:9 .
**expectation** 27:6, 27:11 .
**expenses** 27:15 .
**expensive** 27:21 .

explain 22:18 .
explanation 33:11 .
extent 8:23, 34:21 .
extraordinary 11:4, 31:23 .

**< F >.**
fabrication 14:11 .
fact 14:3, 17:10, 18:1, 18:22, 21:23, 22:21, 25:15, 26:24, 27:12 .
factor 18:3, 32:22 .
factors 17:2, 18:3, 32:1, 33:24, 33:25, 34:2, 35:20 .
factual 33:13 .
failed 15:25, 16:4, 21:19 .
failing 21:22 .
fails 18:1, 22:23 .
failure 20:24 .
fairness 4:8, 6:13, 25:17 .
faith 24:18, 24:25, 25:3, 25:6, 30:22, 34:16 .
fall 17:2 .
false 24:14 .
fashion 4:20 .
fatal 16:5 .
favor 12:3, 34:14 .
favors 32:6 .
Federal 8:23, 8:24, 10:2, 36:30 .
feels 25:25 .
feet 5:8, 5:9 .
few 4:24, 28:9, 32:16 .
fiduciary 18:6, 22:16, 24:13, 34:10 .
fight 20:16, 22:8, 22:9, 31:7 .
fights 20:1, 20:2, 20:16 .
file 19:16, 19:25, 20:5, 20:17 .
filed 4:7, 4:13, 4:21, 12:12, 13:23, 16:11, 18:19, 28:13, 33:3, 33:8, 33:18 .
filing 5:11, 15:9, 19:1, 19:12, 33:17 .
filings 29:4 .
find 17:10, 29:13, 32:8, 33:24, 34:2, 35:17 .
finding 17:13 .
fine 26:2 .
First 3:9, 3:24, 5:11, 14:8, 32:3, 32:22 .

fits 17:15 .
five 4:3, 7:8, 13:4, 24:4, 24:11 .
flaw 19:6 .
Floor 1:34 .
focus 5:14, 6:12, 11:22 .
force 26:8 .
foregoing 36:18 .
foreign 21:8 .
format 36:21 .
forward 8:20 .
found 15:21, 16:5, 33:7 .
Four 11:6, 11:19, 13:1, 13:14, 15:19, 16:12, 26:23, 32:1, 35:20 .
four-and-a-half-month 22:19 .
Fourth 23:25, 32:6, 32:10 .
frame 6:24, 7:2, 23:14, 28:25 .
franchise 3:11 .
Frankly 14:11, 16:19, 26:13, 26:16, 27:20 .
fraud 25:3, 34:15 .
frequently 12:5 .
fundamental 3:17 .

**< G >.**
G. 36:15, 36:29 .
GALLAGHER 1:22 .
gave 7:4 .
Gebhardt 1:28 .
generally 14:1 .
gets 18:9 .
getting 32:23, 34:6 .
gilded 6:8 .
give 28:7 .
given 2:17, 7:7, 16:1, 35:22 .
Glenn 1:44, 2:25, 10:21 .
governing 16:23 .
grant 7:14 .
granted 3:2 .
grounds 33:22 .
group 18:14 .
guess 3:8, 8:14, 32:25 .
guidance 20:19, 20:20 .
guidelines 9:5 .

**< H >.**
hac 2:12, 3:1 .
half 13:1, 13:14 .
handed 10:23 .
happen 14:14 .
happened 14:14, 27:7, 33:15, 33:19 .
happy 10:18 .
hard 11:2 .
hardships 26:4 .
harm 3:18, 17:3, 17:10, 17:11, 17:20, 26:6, 26:9, 27:13, 32:4, 34:20, 34:21, 34:22 .
harmed 26:6, 26:21 .
harms 9:2 .
haste 12:7 .
hear 10:20 .
heard 2:14, 2:19, 22:24, 31:19 .
HEARING 1:21, 2:6, 3:7, 12:11, 25:25 .
heavily 12:3 .
heightened 25:17 .
held 36:20 .
hereby 36:17 .
herring 5:15 .
higher 35:3 .
highlighting 27:22 .
highlights 19:6 .
history 4:15, 7:13 .
Hogan 1:40, 2:23 .
hold 28:25 .
holders 18:20, 19:1 .
holding 27:11 .
holiday 4:22, 7:3 .
honest 24:25 .
Honorable 1:22, 31:14, 36:7 .
Hotels 1:10, 2:4, 2:24, 10:22 .

**< I >.**
identify 2:8 .
ignore 4:10 .
illegitimate 8:21 .
imminence 34:22, 34:23 .
imminent 17:2, 34:21 .
impaneled 23:24 .
impossible 9:25 .
improper 10:1 .
inability 27:8 .

inapposite 29:18 .
INC. 1:10 .
include 9:23, 15:21, 21:2, 21:19 .
included 21:6 .
inclusion 10:3, 21:13 .
Incorporated 2:5, 2:24 .
incorrect 22:17 .
incurred 27:14 .
independent 32:22 .
independently 25:6, 33:23 .
indicated 29:6 .
indication 13:5, 14:19, 14:25, 22:14 .
indisputably 24:14, 32:19 .
inform 5:7 .
informed 24:24 .
Initially 23:13 .
injunction 2:7, 7:17, 7:19, 11:12, 11:20, 15:23, 16:3, 21:12, 32:9, 32:10, 35:2 .
injunctions 31:23, 32:13, 32:18 .
injunctive 8:6, 15:18, 16:17, 17:7, 17:16, 31:21, 31:25, 32:5, 32:6, 32:7, 33:23, 34:1, 35:21 .
instance 25:11 .
instant 30:23 .
instruct 7:14 .
instructive 15:22 .
intend 10:24 .
intended 5:7, 28:24 .
intention 22:7 .
intentional 23:10, 33:2 .
interest 14:20, 14:25, 15:7, 15:15, 22:10, 22:14, 23:20, 24:20, 25:7, 27:19, 32:7, 35:1 .
interested 20:1 .
interests 25:1 .
International 1:41 .
interrupted 9:19, 28:4 .
intervening 15:10 .
invalid 20:24 .
invalidate 11:7 .
invalidated 28:1 .
invited 23:4 .
irrelevant 27:3 .
irreparable 3:18, 17:2, 17:10, 17:11, 17:20, 32:4, 34:20,

34:21 .

issue 4:8, 6:13, 10:11, 10:15, 15:1, 15:5, 16:15, 28:10, 28:15, 32:24 .

items 11:22, 12:15 .

.

.

**< J >** .

J. 1:39 .

jeopardizing 16:2 .

Jonathan 1:32, 2:12 .

judgment 13:19, 24:16, 25:14, 25:19, 34:11, 34:17 .

Judicial 36:22 .

jurisdictionally 18:9 .

justify 32:25, 33:16 .

.

.

**< K >** .

Kandinov 1:33 .

Keith 1:27, 2:10 .

kept 6:19 .

key 18:3 .

kinds 4:15 .

known 6:10 .

knows 11:17, 28:24 .

KURTZ 1:44, 2:25, 3:2, 3:6, 10:21, 11:3, 13:7, 13:12, 13:14, 14:8, 17:4, 17:18, 19:14, 19:24, 20:15, 23:2, 23:13, 26:3, 28:6, 28:11, 28:12, 28:17, 29:13, 30:7, 30:13, 30:17, 31:13, 36:9 .

.

.

**< L >** .

lack 33:1 .

last 26:3, 28:7, 29:16, 32:12 .

lastly 31:1 .

late 5:4, 14:16 .

later 13:1, 13:2, 15:22 .

latest 4:12, 33:6 .

law 8:23, 8:24, 10:2, 18:5, 21:8, 21:25, 25:21, 31:22 .

laws 23:8, 23:15 .

lawsuit 13:23, 15:9, 30:19 .

least 19:19, 20:6, 33:19, 35:12 .

leaving 15:16 .

led 33:2 .

legal 8:2 .

legality 4:8, 6:13 .

legitimate 8:15 .

letter 3:25, 4:2, 4:13, 6:7, 6:9, 27:17, 28:19 .

leverage 22:13 .

likelihood 12:1, 16:10, 16:18, 17:21, 17:25, 18:2, 34:3, 34:18 .

likely 32:3, 32:4, 35:13 .

limited 4:20 .

liquid 27:8 .

litigation 4:16 .

little 26:4, 35:22 .

LLP 1:28, 1:33, 1:40, 1:46 .

long 17:6, 17:14, 27:14 .

look 17:5, 18:3, 26:14, 29:9, 31:3, 31:11 .

looked 17:20 .

looking 7:21, 25:4, 32:21, 34:2, 35:4 .

loss 18:8 .

lot 17:15 .

Lovells 1:40, 2:23 .

LP1 1:5, 2:4, 2:11 .

LUSBY 1:27, 2:10, 2:20 .

.

.

**< M >** .

M. 1:27, 1:44, 1:45 .

mail 19:17 .

Mandatory 7:19, 11:12, 11:16, 11:17, 21:12, 32:9, 32:13, 32:18, 35:2 .

manipulate 3:15 .

manipulation 23:10 .

manner 24:19 .

MARTINEZ 1:39, 2:22, 2:23, 36:4 .

Maryland 1:2, 1:16, 24:16, 36:17 .

material 6:6, 6:15, 33:14 .

materials 10:5, 12:11, 15:13, 19:8, 22:3, 22:4, 22:5, 30:8 .

matter 14:23, 36:1, 36:20 .

matters 3:13, 5:20 .

MD 1:30, 1:42 .

mean 27:9 .

Meaning 21:11 .

means 24:18 .

measured 6:2 .

meet 9:12, 30:23, 31:24, 34:25 .

meeting 3:18, 5:16, 5:19, 6:3, 6:19, 7:5, 7:8, 7:10, 8:16, 8:18, 9:3, 11:5, 11:19, 13:3, 15:24, 16:2, 16:13, 20:23, 24:2, 24:5, 24:6, 26:13, 26:22, 26:23, 27:12, 27:17, 28:23, 28:25, 29:2, 29:6 .

meetings 9:9 .

memorandum 7:18 .

Memorial 7:3 .

mention 33:24 .

mentioned 10:9, 16:19, 23:25, 27:22 .

Merit 18:7, 36:15 .

merits 12:1, 16:10, 16:19, 17:22, 18:1, 18:2, 32:3, 34:3, 34:18 .

met 35:20 .

million 12:14, 16:13, 27:15, 27:24, 35:5 .

millions 27:21 .

mind 25:7 .

misleading 19:6, 21:18, 21:24 .

missed 13:24, 20:13, 26:12 .

Mitchell 36:15, 36:29 .

moment 33:24 .

month 13:2, 13:22, 14:17, 26:15 .

months 3:23, 5:14, 5:19, 7:8, 12:9, 12:18, 13:1, 13:4, 13:15, 13:24, 15:10, 20:4, 24:11 .

morning 2:3, 2:10, 2:11, 2:19, 2:22, 3:4, 3:6, 3:10, 10:21, 12:13, 36:2 .

Morris 1:33 .

mostly 17:20 .

motion 2:6, 2:14, 2:18, 3:8, 19:7, 21:20, 28:8, 31:20 .

MOTIONS 1:21, 2:17, 3:1 .

motive 31:5 .

motives 3:13, 31:3 .

mount 21:14, 22:8, 27:18 .

mounted 22:8, 31:7 .

movant 31:25, 32:11, 32:16, 34:3, 35:19 .

move 5:16, 16:25 .

moved 6:19, 13:3, 13:6, 14:4, 23:1, 33:5 .

movement 34:13 .

.

.

**< N >** .

name 11:13 .

names 21:2 .

narrate 6:14 .

nature 35:22 .

nearly 7:8 .

necessarily 7:25 .

necessitated 4:21 .

necessity 6:20 .

need 20:4, 31:4, 31:8, 36:1 .

needed 28:18 .

needless 4:16 .

needs 8:24, 16:16 .

negotiate 14:13, 33:17 .

negotiated 7:3 .

neither 14:22, 18:6 .

New 1:35, 1:48, 11:15, 27:1, 35:12 .

next 6:7, 7:22, 8:6, 8:16, 9:4, 15:1, 15:19, 20:11, 32:16, 35:7, 35:10 .

Nice 2:22 .

no-action 27:17 .

No. 1:8, 6:8, 19:14, 21:5 .

Nobody 22:21, 23:4 .

nominate 3:17, 12:21, 13:16, 20:22, 30:2 .

nominated 21:5 .

nominating 12:20, 13:9, 15:7, 15:8, 23:15, 24:3, 24:15 .

nomination 4:18, 6:20, 6:23, 7:9, 7:11, 10:11, 10:14, 12:10, 12:21, 12:25, 13:6, 14:10, 14:21, 15:1, 28:17, 28:23, 29:3, 30:9, 30:10, 31:5 .

nominations 6:21, 7:1, 7:14, 8:20, 10:3, 14:13, 14:22, 20:21, 20:24, 21:9, 22:22, 23:4, 23:20, 33:6, 33:7 .

nominees 9:24, 10:3, 11:13, 11:15, 18:15, 18:16, 18:17, 18:18, 18:24, 18:25, 21:3, 21:11, 22:12 .

nonbinding 14:19 .

**None** 22:6, 24:7 .
**nonexistent** 21:23 .
**nonmisleading** 10:4 .
**Nor** 14:14, 30:9 .
**normally** 16:22 .
**NORTHERN** 1:3 .
**note** 16:7 .
**noted** 31:22 .
**notes** 1:50 .
**nothing** 9:21, 12:7, 31:10 .
**notice** 4:18, 5:8, 5:18, 6:4, 10:11, 10:14, 12:19, 13:19, 20:25, 21:9, 24:10, 28:17, 28:22, 28:23, 29:3, 29:5, 31:6 .
**notified** 13:2 .
**noting** 11:4 .
**notion** 5:14, 8:22, 29:19, 30:1 .
**number** 2:5, 6:2, 27:14, 27:23 .
**numbers** 34:6 .
**NY** 1:35, 1:48 .
.
.
**< O >** .
**object** 28:20 .
**obligation** 13:9 .
**obtain** 11:17, 11:18 .
**obtaining** 27:17 .
**obviously** 8:19 .
**occur** 4:25, 11:7 .
**occurred** 3:25, 7:2 .
**occurs** 32:11 .
**October** 4:13 .
**oddly** 17:18 .
**offer** 30:15 .
**offered** 4:3, 29:1 .
**Official** 36:14, 36:30 .
**Okay** 3:7, 4:23, 7:6, 10:16, 11:3, 17:17, 26:2, 29:15, 30:6, 30:11 .
**omit** 21:10 .
**Once** 5:16 .
**One** 1:29, 3:12, 8:5, 10:15, 11:22, 15:15, 15:21, 16:24, 18:6, 18:17, 20:3, 25:12, 30:11, 35:24 .
**one-year** 9:11 .
**open** 3:7 .
**operating** 5:17, 30:23,

30:24 .
**operative** 5:15 .
**opine** 8:14 .
**opportunity** 16:1, 31:18 .
**opposed** 20:1 .
**opposition** 3:11, 10:12 .
**order** 2:7, 7:15, 31:20, 31:24, 32:2, 33:20 .
**orderly** 25:9 .
**ordinary** 24:21 .
**original** 6:19, 6:23, 7:10, 13:15 .
**otherwise** 8:15, 15:9, 20:5, 33:20 .
**outside** 17:1, 17:4, 18:17 .
**overcome** 24:16, 34:16 .
**override** 23:7 .
**own** 3:24, 10:1, 12:8, 19:16, 19:17, 20:2, 21:14, 26:10, 26:11, 29:4 .
.
.
**< P >** .
**page** 19:7, 20:12, 21:20, 36:21 .
**pages** 3:22 .
**papers** 15:3 .
**parallel** 15:22 .
**part** 8:21, 9:7, 13:10, 13:12, 20:9, 27:13 .
**partially** 27:2 .
**participated** 35:7 .
**particular** 9:13, 32:8 .
**parties** 3:13, 17:9, 20:1, 31:22, 32:12, 35:24 .
**party** 25:2 .
**passed** 7:9 .
**past** 9:11 .
**Patricia** 36:15, 36:29 .
**pending** 2:13, 2:15, 2:17, 2:18 .
**People** 13:11, 19:25, 25:16, 33:16 .
**percent** 18:20, 19:2, 19:19, 20:6 .
**perfectly** 33:16 .
**perhaps** 25:10 .
**period** 13:9, 14:10, 24:2, 30:9, 30:10 .
**permit** 2:14 .

**person** 18:14, 18:23, 24:21, 25:5 .
**persons** 18:14 .
**Peter** 1:39, 2:23 .
**place** 5:12, 11:19, 14:8, 32:16, 32:17 .
**plainly** 22:20, 25:8 .
**Plaintiffs** 11:8, 12:7, 12:9, 18:22, 19:2, 22:4, 25:18, 26:6, 33:4, 33:7, 34:18 .
**play** 33:2 .
**plays** 17:9, 17:12, 34:22 .
**Please** 2:3, 2:8 .
**plow** 8:20 .
**podium** 22:19, 25:25 .
**point** 5:20, 11:6, 13:24, 14:20, 15:17, 26:3, 31:1, 36:4 .
**pointed** 10:14, 15:11, 23:21, 26:17 .
**points** 6:18, 28:10 .
**position** 4:1, 4:23, 24:22, 35:14 .
**postponed** 9:4, 29:2 .
**postponement** 7:8, 24:1 .
**postponements** 9:8 .
**posture** 16:7 .
**potentially** 35:12 .
**power** 18:20, 19:2 .
**powerful** 25:14 .
**practitioners** 25:15 .
**pre-winter** 17:18, 17:20, 17:23 .
**preceded** 32:13 .
**precisely** 9:22 .
**precludes** 11:23 .
**preferred** 34:14 .
**prejudicial** 27:7 .
**preliminary** 2:7, 31:21, 31:23 .
**premise** 22:17 .
**premised** 24:14 .
**prepared** 12:12 .
**preparing** 27:15 .
**preserve** 7:20, 32:11, 32:14 .
**presumed** 24:17 .
**presumes** 24:23 .
**presumption** 25:2 .
**presumptively** 24:19 .
**pretty** 24:8, 27:21 .
**prevail** 32:2 .

**prevent** 6:17 .
**preventing** 16:9 .
**previously** 29:4 .
**printing** 27:16 .
**prior** 6:3, 29:18, 31:24 .
**pro** 2:12, 3:1 .
**probably** 28:24 .
**proceed** 35:25 .
**proceeding** 25:6 .
**Proceedings** 1:20, 36:11, 36:20 .
**proceeds** 3:18 .
**process** 12:10 .
**prohibitory** 7:19, 11:18, 32:10 .
**promptly** 4:21 .
**protection** 25:14 .
**proves** 6:18 .
**provide** 9:16, 33:5 .
**provided** 10:24, 12:19, 12:23 .
**provides** 18:23 .
**provision** 9:13, 25:8 .
**provisions** 22:6 .
**proxies** 18:15, 18:17, 18:24 .
**prudent** 24:21 .
**public** 24:2, 32:7, 35:1 .
**pure** 9:7, 14:11 .
**purported** 22:22 .
**purporting** 13:16, 20:22 .
**pursuant** 21:3, 36:18 .
**pushed** 35:10 .
**put** 20:2, 28:21, 35:11, 35:14 .
**puts** 4:23 .
**putting** 21:14 .
.
.
**< Q >** .
**quarter** 27:15 .
**question** 6:16, 12:17, 16:24, 21:1 .
**questionnaire** 12:21, 12:24, 23:19 .
**questions** 10:17, 28:3 .
**quick** 30:15 .
**quickly** 2:17 .
**quo** 7:18, 7:21, 7:23, 8:1, 8:7, 8:10, 8:22, 8:25, 11:18, 32:11, 32:14 .

**quote** 18:14, 18:23 .

.

.

**< R >** .

**R.** 1:32 .

**Rabbani** 15:20, 29:17, 29:18 .

**raise** 14:21, 16:15, 28:9 .

**raised** 25:24 .

**Rather** 14:16, 32:14 .

**rational** 25:5 .

**rationale** 7:7 .

**reached** 14:13, 14:18, 14:19, 14:24, 25:5 .

**reading** 10:12 .

**real** 6:15 .

**realized** 4:20 .

**really** 5:24, 7:20, 11:23, 17:25, 33:12 .

**Realtime** 36:16 .

**reason** 12:4, 14:5, 29:1 .

**reasonably** 24:20 .

**reasons** 4:11, 17:22, 34:17, 35:19 .

**rebut** 25:2 .

**receive** 20:21 .

**received** 4:13 .

**receiving** 7:11, 23:23 .

**Recess** 31:15, 31:16 .

**record** 2:9, 12:23, 28:19, 28:20 .

**red** 5:15 .

**refer** 10:24, 20:9, 20:18 .

**reference** 7:18, 29:13 .

**referenced** 28:11 .

**refuse** 9:23 .

**regarding** 14:3, 29:24 .

**Registered** 36:15 .

**registrant** 18:16, 18:18, 18:25, 20:21, 20:23, 21:2, 21:7 .

**regulations** 36:21 .

**reject** 5:7, 7:16, 8:19, 13:19, 15:17, 28:16 .

**rejected** 5:5, 7:12, 33:8 .

**rejecting** 6:4, 7:13, 10:14, 13:18 .

**rejection** 10:1, 14:18, 28:19, 28:22, 31:5 .

**related** 14:23 .

**relating** 14:21 .

**relevant** 26:5 .

**relief** 8:7, 11:17, 11:18, 11:24, 12:6, 15:18, 16:17, 17:7, 17:16, 20:4, 31:21, 31:25, 32:5, 32:6, 32:7, 32:19, 33:23, 34:1, 35:18, 35:21 .

**rely** 10:5, 12:5, 12:8, 28:22 .

**remedy** 27:12, 31:24 .

**reopen** 13:6, 13:9, 23:3 .

**reopened** 14:4, 22:25, 23:3, 33:6 .

**reopening** 14:10, 29:7, 30:8, 30:9 .

**repeatedly** 14:12 .

**Reporter** 36:14, 36:15, 36:16, 36:30 .

**represent** 27:10 .

**representation** 23:5 .

**representations** 14:12 .

**representing** 27:5 .

**request** 14:22 .

**requested** 12:20, 32:9, 33:23 .

**requests** 15:17 .

**require** 11:12, 21:13 .

**required** 9:5, 10:2, 10:3, 10:4, 11:14, 12:24, 18:22, 19:23, 21:6, 30:5, 34:16 .

**requirement** 5:18, 19:1 .

**requirements** 20:9, 21:1, 21:10, 26:7 .

**requires** 26:22 .

**reset** 5:18, 24:2, 27:20, 29:3 .

**resolution** 4:7 .

**resolve** 4:6, 5:25 .

**resolving** 4:15 .

**Resorts** 1:10, 2:5, 2:24 .

**respect** 19:19, 34:4, 34:10, 34:25 .

**respond** 4:3, 4:18, 6:5, 9:1, 11:11, 14:1, 29:23, 30:21 .

**responded** 4:4 .

**response** 23:9 .

**responses** 30:15 .

**rest** 20:8 .

**restraining** 2:7, 7:15, 31:20 .

**result** 3:18, 25:5, 27:11 .

**resulting** 9:9 .

**review** 31:18 .

**rights** 17:6 .

**ripe** 6:10 .

**rise** 31:14, 36:7 .

**RMR** 36:29 .

**routinely** 15:17, 20:16 .

**Rule** 18:23, 21:21, 21:22, 24:16, 25:9, 25:12, 26:12, 26:21, 27:3, 29:19, 31:12, 34:11, 34:17, 35:11, 35:15 .

**Rules** 9:8, 18:10, 29:19, 34:5, 34:8 .

**run** 20:3 .

**running** 25:16 .

.

.

**< S >** .

**satisfy** 17:23, 26:18 .

**saying** 4:10, 28:20 .

**says** 21:17, 30:17 .

**scare** 9:7, 26:25, 27:3, 27:9 .

**scary** 27:9 .

**scenario** 20:20, 35:14 .

**scheduled** 7:22, 8:5, 8:16, 11:7, 12:15, 32:15, 33:9, 35:7 .

**screen** 11:1 .

**scrutiny** 3:21 .

**seat** 7:4 .

**seated** 2:4, 15:13, 31:17 .

**SEC** 9:5, 18:10, 20:19, 29:4, 29:9, 34:5 .

**Second** 11:25, 16:15, 21:16, 22:15, 27:13, 32:4 .

**Secondly** 23:18 .

**seconds** 30:14 .

**Section** 19:3, 23:14, 23:25 .

**securities** 18:5, 18:8, 21:25, 23:8, 23:15 .

**seek** 11:5, 12:6, 32:14 .

**seeking** 7:17, 7:20, 8:7, 32:17 .

**seems** 5:2, 7:20, 7:22, 35:8 .

**self-dealing** 25:3 .

**self-inflicted** 26:10, 26:19 .

**self-serving** 3:16 .

**sent** 6:7, 13:10, 13:12, 29:6 .

**separate** 19:17 .

**set** 7:9, 22:21, 28:5 .

**sets** 18:5 .

**shareholder** 3:11, 7:1, 7:4, 7:14, 11:5, 12:16, 15:12, 20:22, 21:3, 21:8, 21:10, 23:22, 24:6, 28:20, 30:2 .

**shareholders** 10:5, 11:8, 12:13, 29:20, 35:6 .

**shares** 12:14, 18:21, 20:7, 35:5 .

**shenanigans** 34:13 .

**Shepherd** 1:45, 2:25 .

**shielded** 8:21 .

**show** 18:2 .

**shown** 34:3 .

**shows** 13:16, 28:11 .

**significant** 5:22 .

**significantly** 33:3 .

**similar** 24:22 .

**simpler** 3:14 .

**simply** 3:23, 4:18, 5:15, 6:5, 16:17, 24:9, 31:3 .

**single** 15:2, 29:1 .

**sit** 17:6, 28:3 .

**situation** 15:22, 23:11, 32:15, 34:9, 35:5, 35:8 .

**six** 3:22, 5:14, 5:19, 12:9, 12:18, 13:24, 15:10, 20:3 .

**sizable** 7:13 .

**slate** 5:5 .

**slide** 15:18, 15:20, 19:15, 20:19, 26:17, 29:17 .

**slides** 10:23 .

**smacks** 28:21 .

**Smith** 1:28 .

**solicit** 18:24, 19:18, 20:6 .

**solicitation** 9:25, 19:8, 22:3, 22:4, 22:5 .

**solicited** 16:12, 18:20 .

**soliciting** 18:15, 18:17, 19:1 .

**somehow** 23:7, 27:18, 30:22 .

**someone** 6:22 .

**sometime** 15:10 .

**somewhat** 5:23, 8:18, 10:13 .

**somewhere** 29:12 .

**sorry** 24:4 .

**sort** 7:16, 17:15, 23:10, 27:3 .

**sought** 15:23, 35:3 .

**South** 1:29 .

**specifically** 28:10, 31:2, 34:6 .

**speculate** 31:3 .

**speculation** 3:12 .

**spend** 3:22 .

spoke 31:2 .
spoken 25:20, 25:21 .
standard 25:18, 35:3 .
standards 16:21, 16:22, 16:23, 16:25, 17:5, 17:24, 32:21, 32:24 .
Standing 23:23, 28:25, 29:8 .
stands 31:15, 36:8 .
start 11:4, 12:4, 18:8, 18:12 .
started 10:23 .
starting 16:21, 28:10 .
state 21:8 .
stated 4:11 .
statement 11:16, 16:12, 18:19, 20:3, 20:6, 20:10, 21:15, 21:18, 21:19, 21:20, 21:21 .
States 1:1, 36:16, 36:22 .
status 7:18, 7:21, 7:23, 8:1, 8:7, 8:10, 8:22, 8:25, 11:18, 32:11, 32:12, 32:14 .
stenographically-reported 36:19 .
stenotype 1:50 .
step 31:10 .
STEPHANIE 1:22 .
Stock 27:1, 27:8, 35:12 .
stockholder 12:23, 19:18, 20:25, 28:19 .
stockholders 8:12, 13:3, 21:19, 21:23, 25:12, 26:9, 27:8 .
stop 21:13, 32:17 .
straightforward 6:9, 28:15 .
strategy 33:2 .
Street 1:29 .
subject 30:18, 35:13 .
submission 2:12, 10:8 .
submit 5:11, 6:23, 12:25, 16:6, 23:19 .
submitted 5:5, 6:5, 7:1 .
submitting 4:1 .
subsection 24:18 .
substantially 26:20 .
substantive 23:9 .
succeed 32:3 .
success 12:1, 16:10, 16:18, 17:22, 18:1, 18:2, 34:3, 34:18 .
successfully 6:23 .
sue 14:25, 17:15 .

suffer 32:4 .
suffers 21:25 .
sufficient 16:4, 23:7 .
suggest 5:19 .
suggested 26:25, 28:17 .
suit 33:17, 33:18 .
Suite 1:29, 1:41 .
support 18:15, 18:24, 22:13 .
supporting 23:7 .
supports 24:7, 25:9 .
suppose 8:17 .
supposed 4:25, 6:14, 16:8 .
.
.
< T > .
table 2:25 .
tactic 9:7, 27:1, 27:3, 27:9 .
tainted 3:19, 8:10, 8:11, 8:15 .
talked 26:4, 34:5 .
technicalities 3:16, 6:14, 10:13, 28:22 .
technically 35:11 .
temporary 2:6, 7:15, 31:20 .
Ten 11:6, 12:10, 23:16, 26:24 .
ten-day 7:2, 28:23 .
terms 8:6, 34:13 .
Thanksgiving 14:17 .
theory 19:6 .
they'll 4:17 .
They've 10:12, 22:18, 24:9, 24:10, 24:11 .
Third 12:2, 21:25, 22:1, 32:5 .
Thirdly 23:21 .
though 16:15, 16:21 .
thousands 12:12 .
Three 11:22, 24:4 .
till 31:16 .
timeline 5:21, 6:3, 31:3 .
timeliness 10:6, 10:11, 10:15, 28:15 .
timely 14:14, 15:25, 22:17, 22:20, 22:25 .
today 2:14, 3:2, 5:21, 7:15, 7:21, 11:18, 16:11, 18:9, 22:19, 22:24, 25:25, 27:25, 29:1, 29:8, 31:12, 31:19, 31:22, 34:6 .
together 20:2 .

took 6:4, 19:11, 30:21 .
top 7:12 .
totally 5:20 .
towards 9:2 .
traditional 24:8 .
transaction 30:7 .
TRANSCRIPT 1:20, 36:19, 36:21 .
transcription 1:50 .
transform 3:11 .
transformationally 27:7 .
trial 31:24 .
tried 4:5, 22:18 .
TRO 12:3 .
Tros 31:23 .
true 36:19 .
truthful 10:4 .
try 34:14 .
trying 5:24, 14:6, 25:2, 30:19, 32:11, 33:11, 33:17 .
turns 10:6 .
Two 5:7, 6:4, 7:12, 18:4, 18:5, 25:11, 30:21 .
type 11:23, 31:25, 32:8, 34:15 .
typically 25:17 .
.
.
< U > .
ultimately 33:16 .
unambiguous 23:8, 25:8 .
unclear 35:23 .
unconscionable 25:3 .
uncontested 32:12 .
undeniable 3:19 .
understand 8:3, 33:11 .
undisputed 22:20 .
unilaterally 6:19 .
United 1:1, 36:16, 36:22 .
universal 10:4, 21:6, 29:19 .
Unless 25:25, 28:3 .
unlikely 35:9 .
unprecedented 11:5 .
unsupported 23:6 .
untainted 8:2, 8:12 .
until 5:21, 7:5, 12:10, 13:1, 14:23, 28:12, 33:8 .
untimely 7:12, 10:8, 13:19, 19:12 .
unusual 25:10 .

upcoming 20:22 .
using 6:16 .
.
.
< V > .
v. 15:20 .
valid 10:2 .
various 10:13, 34:5 .
versus 2:4 .
vice 3:1 .
view 8:1, 8:24, 17:1, 20:13, 36:4 .
violate 21:22 .
violated 18:10, 22:2 .
violation 21:18, 35:11, 35:15 .
violations 10:9 .
VOEGELE 1:32, 2:12, 3:10, 4:14, 5:1, 5:6, 5:13, 5:23, 6:12, 6:25, 7:7, 7:25, 8:9, 8:17, 9:6, 9:14, 9:16, 9:20, 10:10, 10:17, 28:9, 29:8, 29:16, 29:25, 36:3 .
vote 4:24, 12:16, 18:21, 28:1, 35:10 .
voted 12:14, 35:6 .
votes 11:7, 12:13, 16:12, 16:13, 23:23, 27:24 .
voting 18:20, 19:2, 19:20 .
vs 1:8 .
.
.
< W > .
wait 17:6 .
waited 3:22, 5:7, 12:10, 17:14, 24:6, 26:15 .
waiting 27:13 .
wanted 16:15 .
warranted 35:18 .
wasted 27:18 .
weapon 6:17 .
week 7:22, 8:6, 8:16, 9:4, 32:16, 35:7, 35:10 .
weekend 7:3 .
weeks 5:7, 6:4 .
weighs 12:2 .
whatsoever 18:7 .
whether 6:16, 8:14, 12:18, 20:16, 25:4, 27:2, 33:13, 33:15, 34:1 .
White 1:46, 3:1, 10:22 .

**will** 2:14, 2:18, 3:2, 3:17, 9:4, 11:14, 11:21, 16:7, 18:8, 23:24, 26:20, 27:18, 28:3, 35:23 .
**wind** 10:7 .
**window** 13:6, 22:25, 29:7 .
**Winter** 17:2, 17:24, 33:25, 34:2, 35:20 .
**wishes** 2:18 .
**within** 7:1, 9:5, 13:17 .
**without** 6:20, 9:9, 16:2 .
**word** 28:7 .
**work** 33:12, 33:13 .
**works** 25:10, 25:13 .
**worth** 27:22 .
**wound** 26:19 .
.
.
**< Y > .**
**year** 9:5, 15:14 .
**years** 7:13 .
**York** 1:35, 1:48, 27:1, 35:12 .
**you-all** 36:6 .
**yourselves** 2:8 .